UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BETH AMENDOLA, on behalf of herself and others
similarly situated,                                          Index No.: 07 CV 6088 (DLC)

                                    Plaintiff,

                    v.

BRISTOL-MYERS SQUIBB COMPANY
and Does 1 through 20, inclusive,
                                    Defendants.
-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR
216(b) NOTICE**

Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000

## TABLE OF CONTENTS

PAGE NO(s):

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-ix

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THIS CASE SHOULD BE CERTIFIED AS A COLLECTIVE
      ACTION UNDER 29 U.S.C. § 216(b) OF THE FLSA . . . . . . . . . . . . . . . . . . 2

      A.    The Standard for Granting Notice is "Lenient" . . . . . . . . . . . . . . . . . . . 2

      B.    Plaintiff Need Not Prove The Merits of Her Case At The
            Conditional Certification Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Plaintiff Easily Satisfies Her Burden to Show The Existence
            of "Similarly Situated" Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            1.    BMS Concedes That PRs Throughout the Country
                  are Similarly Situated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            2.    BMS Concedes That PRs With Different Titles are
                  Similarly Situated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            3.    PRs in Different Divisions Are "Similarly Situated" . . . . . . . . . . . 5

      D.    The Exemptions Can Easily Be Determined on a Common Basis . . . . . . 7

            1.    Outside Sales Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            2.    Administrative Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                  a.    PRs Do Not Perform Administrative Work
                        Related to BMS' Management Or General
                        Business Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                  b.    PRs Do Not Exercise Discretion With Respect to
                        Matters of Significance . . . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    Highly Compensated and Motor Carrier Exemptions . . . . . . . . . 16

E.   Interest in the Lawsuit is Not a Factor in the Second Circuit At the Preliminary Notice Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

II.   EQUITABLE TOLLING IS WARRANTED . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.   PLAINTIFF'S PROPOSED NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                       **PAGE NO(s):**

*Adams v. Dep't of Juvenile Justice*,
    1996 WL 82404 (S.D.N.Y. Feb. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Adams v. Inter-Con Security Systems, Inc.*,
    2007 WL 1089694 (N.D. Cal. April 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Aguire v. SBC Commc'ns, Inc.*,
    2006 WL 772756 (S.D.Tex. March 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Aguire v. SBC Commc'ns,  Inc.*,
    2006 WL 964554 (S.D.Tex. April 11, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

*Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ale v. Tennessee Valley Auth.*,
    269 F.3d 680 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barnick v. Wyeth*,
    2007 WL 4105411 (C.D. Cal. Oct. 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Beauperthuy v. 24 hour Fitness USA, Inc.*,
    2007 WL 707475 (N.D. Cal. Mar. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Boldozier v. Am. Family Mut. Ins.*,
    375 F.Supp.2d 1089 (D. Colo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bosley v. Chubb Corp.*,
    2005 WL 1334565 (E.D. Pa. June 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bothell v. Phase Metrics, Inc.*,
    299 F.3d 1120 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bratt v. County of Los Angeles*,
    912 F.2d 1066 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Casas v. Conseco Fin. Corp.*,
   2002 WL 507059 (D. Minn. Mar. 31, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*Clements v. Resource Consultants, Inc.*,
   2006 WL 1579634 (D. Utah June 2, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cleveland v. City of Los Angeles*,
   420 F.3d 981 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cote v. Burroughs Wellcome Co.*,
   558 F.Supp. 883 (D.C. Pa. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cuzco v. Orion Builders, Inc.*,
   477 F.Supp.2d 628 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dalheim v. KDFW-TV*,
   918 F.2d 1220 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Damassia v. Duane Reade, Inc.*,
   2006 WL 2853971 (S.D.N.Y. March 8, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 7

*Davis v. Charoen Pokphand (USA), Inc.*,
   303 F.Supp.2d 1272 (M.D.Ala. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dean v. Priceline.com*,
   2001 WL 35961086 (D.Conn. June 6, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Diaz v. Elecs. Boutique*,
   2005 WL 2654270 (W.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dominguez v. Don Pedro Rest.*,
   2007 WL 271567 (N.D. Ind. Jan. 25, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Douglas v. GE Energy Reuter Stokes*,
   2007 WL 1341779 (N.D. Ohio 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Evancho v. Snofi-Aventis U.S. Inc.*,
   2007 WL 4546100 (D.N.J. Dec. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

*Gerlach v. Wells Fargo & Co.*,
   2006 WL 824652 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
   282 F.Supp.2d 91 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hodgson v. Klages Coal and Ice, Co.*,
   435 F.2d 377 (6th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hallissey v. AOL*,
   2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Iglesias-Mendoza*,
   239 F.R.D. (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ingersoll v. Royal & Sunalliance USA*,
   2006 WL 859265 (W.D. Wash. Feb. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jacobsen v. The Stop & Shop Supermarket Co.*,
   2004 WL 1918795 (S.D.N.Y. Aug. 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kautsch v. Premier Communs.*,
   2007 WL 188480 (W.D. Mo. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*King v. West Corp.*,
   2006 WL 118577 (D. Neb. Jan. 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Krueger v. New York Tel. Co.*,
   1993 WL 276058 (S.D.N.Y. July 21, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lee v. ABC Carpet & Home*,
   236 F.R.D. 193 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Levy v. Verison Inform. Servs. Inc.*,
   2007 WL 1747104 (E.D.N.Y. June 11, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

*Martin v. Cooper Elec. Supply Co.*,
   940 F.2d 896 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 14, 16

*Masson v. Ecolab, Inc.*,
   2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Metronic, Inc. v. Benda,*
    689 F.2d 645 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mike v. Safeco Ins. Co.,*
    274 F.Supp.2d 216 (D. Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*Miranda-Albino v. Ferrero, Inc.,*
    455 F.Supp.2d 66 (D. Puerto Rico 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Morden v. T-Mobile USA, Inc.,*
    2006 WL 2620320 (W.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Morisky v. Public Serv. Elec. & Gas Co.,*
    111 F. Supp.2d 492 (D.N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*Morisky v. Public Serv. Elec. & Gas Co.,*
    111 F.Supp.2d 493 (D.N.J 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Moss v. Crawford & Co.,*
    201 F.R.D. 398 (W.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Neary v. Metropolitan Property,*
    517 F.Supp.2d 606 (D. Conn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 18

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pfohl v. Framers Ins. Group,*
    2004 WL 554834 (C.D. Cal. March 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*Prizmic v. Armour,*
    2006 WL 1662614 (E.D.N.Y. June 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Reab v. Elec. Arts, Inc.,*
    214 F.R.D. 623 (D. Colo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reich v. Homier Distrib. Co., Inc.,*
    362 F. Supp. 2d 1009 (N.D. Ind. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reich v. John Alden Life Ins. Co.,*
    126 F.3d 1 (1st Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

*Reich v. State of New York*,
  3 F.3d 581 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reimnitz v. Source One Distribs., Inc.*,
  2007 WL 1624778 (S.D. Fla. June 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reylea v. Carman, Callahan and Ingham, L.L.P.*,
  2006 WL 2577829 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Robinson-Smith v. Gov't Empl. Ins. Co*,
  323 F.Supp.2d 12 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Romero v. Producers Dairy Foods, Inc.*,
  235 F.R.D. 474 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ruggeri v. Boehringer Ingelheim Corp.*,
  No. 06-1985 (D. Conn. Feb. 27, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Schaefer v. Indiana Michigan Power Co.*,
  358 F.3d 394 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Schaefer-Larose v. Eli Lilly & Co.*,
  No. 07-1133 (S.D.Ind. Feb. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

*Scholtisek v. Eldre Corp.*,
  229 F.R.D. 381 (W.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Scholtisek v. The Eldre Corp.*,
  229 F.R.D. 281, 387 (W.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Scott v. Aetna Servs. Inc.*,
  210 F.R.D. 261 (D. Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Seminole Tribe v. Florida*,
  517 U.S. 44 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Silverman v. SmithKlein Beecham*,
  2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . 15

*Skipper v. Superior Dairies, Inc.*,
  512 F.2d 409 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stanfield v. First NLC Fin. Servs., LLC,*
    2006 WL 3190527 (N.D. Cal. Nov. 1, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Taillon v. Kohler Rental Power, Inc. Ex rel. Kohler Col,*
    2003 WL 2006593 (N.D. Ill. April 29, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tierno v. Rite-Aid Corp.,*
    2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Wang v. Chinese Daily News, Inc.,*
    231 F.R.D. 602 (W.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*West v. Border Foods Inc.,*
    2006 WL 1892527 (D. Minn. July 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*White v. Osmose, Inc.,*
    204 F.Supp.2d 1309 (M.D. Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wirtz v. Charleston Coca Cola Bottling Co.,*
    356 F.2d 428 (4th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wirtz v. First Nat'l Bank & Trust Co.,*
    365 F.2d 641 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wirtz v. Keystone Readers Service, Inc.,*
    418 F.2d 249 (5th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wombles v. Title Max,*
    2005 WL 3312670 (M.DS. Ala. Dec. 7, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Young v. Cooper Cameron Corp.,*
    229 F.R.D. 50 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## STATE CASES

*Harris v. Superior Court,*
    154 Cal.App.4th 164 (Cal. Ct. App. 2 Dist. Aug. 16, 2007) . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL STATUTES**

29 U.S.C. §203(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

29 U.S.C. § 213(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 11, 18

49 U.S.C. § 13102(12-13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL REGULATIONS**

29 C.F.R. § 541.200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

29 C.F.R. § 541.200-202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 541.205(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

29 C.F.R. § 541.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 C.F.R. § 541.503(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

29 C.F.R. § 541.503(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 C.F.R. § 541.505(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 C.F.R. § 541.601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

29 C.F.R. § 782.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## PRELIMINARY STATEMENT

In an illuminating preview of its summary judgment argument, BMS spends almost its entire brief on the merits, not the 216(b) motion. And for good reason. BMS simply has no effective argument in opposition to notice. BMS now concedes: Pharmaceutical Reps in every state and region are "similarly situated." PRs with different job titles are similarly situated. Even BMS' halfhearted attempt to distinguish across different divisions is little more than window dressing for an argument on the merits.

Plaintiff very much looks forward to a debate on the merits when she and the collective class move for summary judgment. Plaintiff believes BMS will be unable to prove that the "sales" exemption applies to people who have never sold anything to anyone. BMS will be unable to prove that the "administrative exemption" applies to people who cannot even highlight a document without permission and who have no say whatsoever in matters of company policy. BMS will be unable to prove the "motor carrier" or "highly compensated" exemptions.

But that debate is for another day. For now, it is clear that all PRs are "similarly situated": they have the same core job duties and responsibilities, they are subject to the same uniform non-overtime policy, they are all either exempt or non-exempt under the FLSA. It is hardly surprising that in two nearly identical cases in the last week, two federal courts conditionally certified a nationwide class of PRs. *Schaefer-Larose v. Eli Lilly & Co.*, No. 07-1133 (S.D.Ind. Feb. 22, 2008) (Ex. A) and *Ruggeri v. Boehringer Ingelheim Corp.*, No. 06-1985 (D. Conn. Feb. 27, 2008) (Ex. B).[1]

Plaintiff's motion should be granted.

---

[1] All exhibits are attached to the Saylor Reply Declaration, dated Feb. 29, 2008.

1

## ARGUMENT

**I. THIS CASE SHOULD BE CERTIFIED AS A COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b) OF THE FLSA**

### A. The Standard for Granting Notice is "Lenient"

BMS rightly concedes that a "'second-stage' analysis is not appropriate." (Def. Opp. at 12 n.8.) At this undisputed first stage, Plaintiff must meet only a minimal burden of showing through the pleadings and declarations that the "similarly situated" requirement is met, a "fairly lenient standard." *Iglesias-Mendoza v. LaBelle Farm Inc.*, 239 F.R.D. 363, 367; *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006); Pl's Br. n.46-50 (collecting cases).

Notwithstanding BMS' suggestion in a footnote (Def.'s Opp. 12 n.8), there is no undefined middle standard between the first and second stage simply because the parties have engaged in limited notice discovery. *Cuzco v. Orion Builders, Inc.*, 477 F.Supp.2d 628, 632 (S.D.N.Y. 2007) (describing two stages of review). "Plaintiff's motion here seeks only a first-step certification, and even though discovery is underway, it would be inappropriate at this time to attempt to make more than the first-step certification decision." *Id.*; *Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *4 (S.D.N.Y. March 8, 2007) (because fact discovery is not complete, "[i]t would . . . be inappropriate to make more than a 'preliminary determination' . . . or to require plaintiffs to meet a more stringent standard").[2] The heightened second step of the

---

[2] The cases Defendant relies upon do not support a heightened standard under these circumstances. In *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp.2d 492, 497-98 (D.N.J. 2000), the court noted that the discovery deadline had passed prior to the plaintiff having filed a motion for notice. Similarly, in *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 n.2 (M.D. Ala. 2002), the court noted that "*extensive* discovery" had taken place. *Id.* (emphasis added). The exact amount of discovery that had been conducted in *Davis v. Charoen Pokphand (USA), Inc.*, 303 F.Supp.2d 1272 (M.D.Ala. 2004), is unclear; however that court did note that "[t]he second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed *after discovery is largely complete and the matter is ready for trial.*" *Id.* at 1275 (emphasis supplied and citation omitted); *see also Pfohl v. Framers Ins. Group*, 2004 WL 554834, *2 (C.D. Cal. March 1, 2004) ("The second determination is made

2

certification analysis only occurs upon *completion* of discovery. *Id.*; *see also Hallissey v. AOL*,

2008 WL 465112, *1 (S.D.N.Y. Feb. 19, 2008) (refusing to apply a "more stringent standard"

even though several depositions had been taken and some documents exchanged); *Masson v.*

*EcoLab, Inc.*, 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (second stage occurs "after

discovery is largely complete"); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)

(same); *Prizmic v. Armour, Inc.*, 2006 WL 1662614, at *2 (E.D.N.Y. June 2, 2006) ("Only *after*

*discovery has been completed* should the Court engage in a second more heightened stage of

scrutiny to determine whether the class should be decertified or the case should proceed to trial as

a collective action") (emphasis added); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474,

482 (E.D. Cal. 2006) ("*[w]here discovery is complete*, courts sometimes bypass" the preliminary

determination and apply the more stringent analysis for a final determination) (emphasis

supplied).

Applying the lenient first-stage test (or indeed any test), Plaintiff easily meets the

requirements for Section 216(b) notice.[3]

## B.  Plaintiff Need Not Prove The Merits of Her Case At The Conditional Certification Stage

Apparently unable to deal with this *216(b) motion*, BMS devotes almost its entire

brief to the merits. But "[a]t this conditional certification stage, the focus is not on whether there

has been an actual violation of law, but rather on whether the proposed plaintiffs are similarly

---

after discovery is largely complete."). Here, by contrast, merits discovery has not commenced. Only class
certification discovery has been completed.

[3] If later discovery warrants, the Court will be able to modify or decertify the case. Thus, while potential
plaintiffs lose unpaid overtime claims if notice is not properly disseminated, there is little prejudice to BMS from
granting the motion. *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 55-56 (S.D.N.Y. 2005).

3

situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been

violated." *Levy v. Verison Inform. Servs. Inc.*, 2007 WL 1747104, at *3 (E.D.N.Y. June 11,

2007) (internal quotes omitted); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 91,

96 (S.D.N.Y. 2003); *Damassia*, 2006 WL 2853971, at *5; *Masson*, 2005 WL 2000133, at *13-

*14; *Krueger v. New York Tel. Co.*, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993); *Young v.*

*Cooper Cameron Corp.* 229 F.R.D. 50, 55 (S.D.N.Y. 2005).[4]

      Of course, BMS is wrong on the merits. For purposes of this brief, however, it is

enough that the putative collective class is "similarly situated" with respect to the merits.

### C.    Plaintiff Easily Satisfies Her Burden to Show The Existence of "Similarly Situated" Employees

#### 1.    BMS Concedes That PRs Throughout the Country are Similarly Situated

      Nowhere in its brief does BMS even attempt to argue any differences among PRs

in different states or regions. It is undisputed: PRs throughout the country are similarly situated.

#### 2.    BMS Concedes That PRs With Different Titles are Similarly Situated

      Nowhere in its brief does BMS even attempt to argue any differences among

territory business managers ("TBMs"), associate TBMs, senior TBMs, or executive TBMs. This

point is also undisputed: PRs of all different job titles are similarly situated.

#### 3.    PRs in Different Divisions Are "Similarly Situated"

---

[4] BMS claims Plaintiff must make a "substantial" showing that she and other PRs are "victims of a common policy or plan that *violated the law.*" (Def's Opp. 12.) The cases BMS cite, however, only support the proposition that Plaintiff must make "allegations" that Defendant's actions violated the law. *See, e.g., Scholtisek*, 229 F.R.D. at 387. Indeed, *Scholtisek* states that the "merits of plaintiff's claims . . . are not relevant at this [certification] stage." *Id.* at 391 (collecting cases stating that plaintiffs need not make a showing of success on the merits at the initial certification stage); *see also Mike v. Safeco Ins. Co.*, 274 F.Supp.2d 216, 220 (D. Conn. 2003) (plaintiff must merely show "basis to conclude that *questions* common to a potential group of plaintiffs would predominate a determination of the merits in this case") (emphasis added).

BMS is reduced to claiming only that PRs in different divisions are not "similarly situated." But Plaintiff need only show her position is similar, not identical, to the positions of PRs in other divisions. *See Damassia*, 2006 WL 2853971, at *3. Plaintiff's declaration – combined with the other declarations submitted by PRs,[5] the similar job descriptions, and the deposition testimony of Defendant's managers – is more than sufficient to carry her modest burden of showing the essential similarity among the PRs' core job duties.[6]

The parties now agree that all PRs are subject to BMS' common policy of treating all PRs as exempt. This united classification shows a common nexus between the alleged overtime pay violations, and conclusively undermines BMS' opposition to this motion. BMS has had sufficient confidence that all PRs' jobs are sufficiently similar that it treats all PRs as a homogenous group for purposes of the FLSA. *Cf. Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (W.D. Cal. 2005) ("Defendant cannot, on the one hand, argue that all . . . [potential class members] are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each . . . [potential class member] in order to determine whether the individual is 'exempt.'"); *Tierno v. Rite-Aid Corp.*, 2006 WL 2535056, *9 (N.D. Cal. Aug. 31, 2006) (Rite Aid "has always categorically classified all Store Managers as exempt

---

[5] The declarations submitted by BMS should be viewed in the context of the inherently coercive employer/ employee relationship and given little weight. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 239 (1978).

[6] Defendant's assertion that Plaintiff's allegations are conclusory and insufficient (Def. Opp. 12-13) are therefore utterly without merit, and the cases BMS relies upon are readily distinguishable. In *Prizmic v. Armour*, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) and *Aguirre v. SBC Comm., Inc.*, 2006 WL 964554 (S.D.Tex. April 11, 2006), the plaintiffs relied solely on their complaint and submitted no affidavits or documents in support of their motion. In *Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100 (D.N.J. Dec. 19, 2007), the plaintiff relied only on the complaint and a handful of affidavits. In *West v. Border Foods Inc.*, 2006 WL 1892527 (D. Minn. July 10, 2006), the plaintiffs relied solely on interrogatory answers and asserted that they were required to work off-the-clock, even though the employer's policy forbade such work and there was no evidence that the alleged practice was carried out by central management.

employees without exception and without regard to store size, location, sales levels, staffing
levels or customer base, and without making any individualized assessments to account for
potential variation . . . Given this, Rite-Aid's contention that each Store Manager position must
now be individually assessed . . . rings hollow.").

        BMS' own brief reveals the company belief that all PRs are "similarly situated."
Throughout the vast majority of its brief, BMS describes its "Sales Reps" uniformly, as a group,
without distinguishing between them on the basis of geography, position, *or* division.  For
example, BMS states: "A Sales Rep's job is to sell and promote the sale of pharmaceutical
products specific to their business division to Health Care Practitioners ("HCPs"), hospitals and
other institutions in their assigned territory, in order to drive sales and market share of their
products in their territory. . . . Sales Reps call on various physicians, doctor's offices, and
hospitals in their territory and 'sell by promoting the products, providing information, answering
questions, understanding, probing, dialoguing with the physician to understand where the product
can be used. . . .'" (Def.'s Opp. 5.)  As BMS notes, that is true for every PR, in every region,
every position, and every division.

        BMS fails to explain how the minor differences between divisions are material to
anything on this motion.  Minor variations in the work performed by PRs (how long a PR spends
with a doctor, whether they visit a doctor in an academic hospital or a private practice, whether
they are responsible for a different product and disease state, whether they have a different style)
have no bearing on whether Plaintiff and potential opt-ins are similarly situated when it comes to
issues actually presented by this case.  "[S]uch facts, even if true, do not undermine plaintiffs'
claim that they are similarly situated with respect to their allegation that defendant's

company-wide compensation policies violate FLSA's overtime requirements. Plaintiffs and opt-in plaintiffs may be similarly entitled to overtime compensation regardless of whether some of them performed their jobs less competently or worked . . . for a shorter amount of time." *Damassia*, 2006 WL 2853971, at *6.

### D.     The Exemptions Can Easily Be Determined on a Common Basis

PRs are similarly situated such that their claims can be adjudicated on a group basis with representative and/or generalized proof. As BMS' brief makes abundantly clear, this is also the case with respect to exemptions under the FLSA.[7]

#### 1.     Outside Sales Exemption

As BMS all but concedes, the "sales" exemption is readily susceptible to common, class-wide proof. The core issue is whether or not PRs actually make "sales" – which the FLSA expressly distinguishes from promoting a product. *See, e.g.*, 29 C.F.R. § 541.503(a). For this inquiry, BMS' asserted variations in work style, division, type of medical professional visited and the like, are simply irrelevant. Either the sales exemption applies to all PRs, or it does not apply to any PRs. That is all that matters for purposes of this 216(b) motion.

Plaintiff's point is simple: not one BMS PR in the country has ever sold anything to anyone. Any PR who tries to sell drugs for BMS would be fired, and perhaps criminally prosecuted. You can't be a baseball player if you've never touched a baseball. You can't be a salesperson if you've never sold anything.

---

[7] The FLSA "is construed liberally in favor of employees; exemptions 'are to be narrowly construed against the employers seeking to assert them.'" *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). An FLSA exemption does not apply unless an employee falls "plainly and unmistakably" within a particular exemption's terms and spirit. *Id.*; *Miranda-Albino v. Ferrero, Inc.*, 455 F.Supp.2d 66, 77 (D.P.R. 2006). If the evidence is ambiguous as to whether the exemption applies, the employer cannot satisfy its burden and the exemption will not apply. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3rd Cir. 1991).

BMS' argument is creative, convoluted, and complicated: somehow by using the language of "sales," BMS can transmogrify people who have not sold, will not sell, and cannot sell, into salespersons.

Since BMS has spent so much effort on the merits, plaintiff will also discuss the merits, if only briefly. BMS' attempt to invoke the outside sales exemptions will fail. The regulations define an "outside salesman" as an employee "(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. §541.500. Section 3(k) of the FLSA defines "sales" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. §203(k).

Anyone (such as a PR) whose role is merely to promote a particular product is not an outside salesman unless her promotion work assists her *own* personal sales. *See* 29 C.F.R. § 541.503(a) ("Promotional work that is actually performed incidental to and in conjunction with an employee's *own* outside sales or solicitations is exempt work. On the other hand, promotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work.") (emphasis added); 29 C.F.R. §541.503(b) ("Promotional activities designed to stimulate sales that will be made by someone else are not exempt outside sales work."); *see also id.* at 541.503(c) ("Another example is a company representative who visits chain stores . . . consults with the store manager when inventory runs low, but does not obtain a commitment for additional purchases. The arrangement of merchandise on the shelves or the replenishing of

stock is not exempt work unless it is incidental to and in conjunction with the employee's own

outside sales. Because the employee in this instance does not consummate the sale nor direct

efforts toward the consummation of a sale, the work is not exempt outside sales work.").

Following the regulations, Courts have consistently required that employees must complete sales[8]

to fall within the "outside sales" exemption.[9]

PRs do not fall within the outside sales exemption because they do not and cannot

sell. They do not sell BMS products to doctors, receive money or any consideration from

doctors, sign contracts with doctors, or receive orders from doctors. A PR's primary duty is to

---

[8] Section 3(k) of the FLSA defines sales as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. §203(k). Defendant's claim that "other disposition" includes promotion is way off the mark. Obtaining a non-binding commitment from a doctor to consider recommending a product to a particular patient type is clearly not the type of "other disposition" contemplated by the regulations – regulations that explicitly distinguish between promotion and sales work. The cases cited by BMS do not suggest otherwise. For example, *Wirtz v. First Nat'l Bank & Trust Co.*, 365 F.2d 641, 645 (10th Cir. 1996), stands merely for the point that renting property – selling a lease – is a type of "other disposition" within the meaning of the regulations. And *Metronic, Inc. v. Benda*, 689 F.2d 645 (7th Cir. 1982) has nothing to do with the exemptions from overtime, or even the FLSA.

[9] *See Clements v. Resource Consultants, Inc.*, 2006 WL 1579634 (D. Utah June 2, 2006) ("In order for the outside salesman exemption to apply, an employee must actually make a sale."); *Miranda-Albino*, 455 F.Supp.2d at 74 n.6 ("[Defendant] argues that the delivery, merchandising, collection, and other tasks [plaintiff] performed were 'incidental to and in conjunction with' his outside sales. [Plaintiff] does not directly contest this assertion. Rather, he argues that he was not engaged in outside sales at all. If [Plaintiff] successfully argues he was not making sales, then the analysis [regarding whether other tasks were 'incidental'] becomes irrelevant."); *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975) ("[T]he trial court overlooked completely the basic fact that Skipper's testimony was undisputed to the extent that he did no selling, in the sense that he had no face-to-face negotiation with a store owner or manager who was in the position of purchasing or ordering the products which Skipper was delivering."); *Wirtz v. Charleston Coca Cola Bottling Co.*, 356 F.2d 428 (4th Cir. 1966); *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 252-53 (5th Cir. 1969) ("To the extent that [plaintiffs] are engaged in promotional activities designed to stimulate sales which will be made by someone else, the work must be considered non-exempt.") (internal quotation and citation omitted); *Reimnitz v. Source One Distribs., Inc.*, 2007 WL 1624778 (S.D. Fla. June 4, 2007) (denying defendant's motion to dismiss where plaintiffs did not make sales, rather were promoters); *see also* U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter ("DOL Opinion Letter"), 1999 DOLWH Lexis 45 (April 20, 1999) (college recruiter whose "primary responsibility is to 'sell' students and their parents on the college" "is not engaged in making sales of the college's services, or obtaining contracts for its services. Rather, college recruitment activity appears analogous to sales promotion work, since, like a promotion person who solicits customers for a business, the college recruiter is engaged in identifying qualified customers, i.e., students, and inducing their application to the college, which in turn decides whether to make a contractual offer of its educational services to the applicant. Accordingly, it is our opinion that the outside salesman exemption does not apply").

attempt to influence the doctors to prescribe BMS prescription drug products. The "commitments," if any, that they obtain from a doctor are not enforceable. Once a doctor writes a prescription, the sale to the patient/customer, if any, takes place between the patient and the retail pharmacy. Well before any such sale of a specific BMS product by a retail pharmacy to a patient/customer occurs, that same BMS product was sold by BMS' Trade group to an independent wholesaler, or large pharmacy chain or hospital. BMS' income from manufacturing these pharmaceutical products is generated exclusively by these bulk sales. (Pl.'s Br. 6.)

BMS relies on a trio of recent decisions from the Central District of California that (1) interpret California law, *not* the FLSA; (2) are on appeal; and (3) are plainly wrong. One of those decisions drew a sharp distinction between California law and the FLSA, acknowledging that plaintiff's argument that he did not sell drugs to physicians but merely promoted them was "likely a correct application of the distinction between [non-exempt] promotion and [potentially exempt] sales laid down by the Department of Labor and several federal courts with regard to the FLSA." *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1264 (C.D. Cal. 2007).

But these three decisions were wrong even under California law, because they relied mistakenly on factors courts consider only in borderline cases, when attempting to determine whether sales was the employee's primary duty, as opposed to a secondary or tertiary duty. These factors only come into play, however, *after* the court has first determined the threshold question of whether the employee actually spends some of his time making sales. *Hodgson v. Klages Coal and Ice, Co.*, 435 F.2d 377 (6th Cir. 1970), the first case to utilize this list of factors, derived them from the former 29 C.F.R. § 541.505(e), and utilized them as the regulations intended them to be used – as factors helpful in "borderline" driver/route salesmen

10

cases to determine whether sales is the employee's primary function. These factors, which BMS

analyzes in detail (Def.'s Opp. 17-19), are irrelevant here because PRs do not satisfy the

threshold question – that is, they promote and do not make *any* sales. The judges in the one

California district that recently wrongly decided that PRs are not exempt were perhaps confused

because some federal courts have skipped over the threshold question where there was no dispute

that the employee engaged in some sales work.[10]

        In any event, the Court need only decide that the *question* of whether PRs are

exempt pursuant to the sales exemption can be decided on a collective basis. Rather than

consign an overburdened judiciary with hundreds of cases each resolving whether PRs are

"salespersons" (the BMS approach), plaintiff respectfully submits that this and the other legal

issues in the case can and should be resolved in one case. *See* FLSA § 216(b).

### 2.      Administrative Exemption

        The administrative exemption is also easily susceptible to collective treatment. In

order to prove that PRs are exempt as administrative employees under federal law, BMS must

prove both that: (1) PRs' primary duty consists of performing office work or non-manual work

directly related to the management or the general business operations of the employer or the

employer's customers; *and* (2) that PRs' primary duties include the exercise of discretion and

independent judgment with respect to matters of significance. *See* 29 U.S.C.§ 213(a)(1); 29

C.F.R. § 541.200-202. Before the Court ever reaches the "discretion and independent judgment"

prong, it must find for BMS on prong one. If not, the administrative exemption does not apply,

_____

[10]  For a further analysis of why the recent Central District of California decisions were wrongly decided, as well as an in-depth explanation of why PRs do not fall within the outside sales exemption, see the appellate briefs attached as Exhibit C & D to the Saylor Reply Decl.

and the "discretion and independent judgment" element will be of no relevance.

### a.  PRs Do Not Perform Administrative Work Related to BMS' Management Or General Business Operations

Prong one is plainly subject to common proof. BMS' declarations address a variety of immaterial variations – *e.g.* drugs represented, promotional materials used, types of medical professionals or administrators called upon, whether they have samples, who their manager is, communication strategy, personal style, *et. al.* (Def.'s Opp. 28-29). None of this matters. The minimal variations that BMS identifies are immaterial to whether PRs' primary duties are "directly related to the management or general business operations" of BMS or its customers, 29 C.F.R. § 541.200.[11]

Line employees who perform the day-to-day work of the employer and who make no decisions about company policy or general company operations cannot be exempt administrators. *See Harris v. Superior Court*, 154 Cal.App.4th 164, 177 (Cal. Ct. App. 2 Dist. Aug. 16, 2007) ("only work performed at the level of *policy* or *general* operations can qualify as 'directly related to management policies or general business operations.' In contrast, work that merely carries out the particular, day-to-day operations of the business is production, not administrative, work. That is the administrative/production dichotomy properly understood.")[12]; *Reich v. State of New York*, 3 F.3d 581, 589 (2d Cir. 1993) (police investigators are not administrative employees because they are not involved in "management policies or general

---

[11] For this reason, a summary judgment opinion from from twenty-five years ago – *Cote v. Burroughs Wellcome Co.*, 558 F.Supp. 883 (D.C. Pa. 1982) – is easily distinguishable. In *Cote*, the plaintiff "Staff Representative" *conceded* that the employee's primary duty directly related to management or general business operations, but argued that the position did not require discretion or independent judgment. *Id.* at 886. Here, Plaintiff disputes that PR positions relate to BMS' management. *Cote* is simply inapplicable.

[12] This decision is now on appeal to the California Supreme Court, and according to California state rules is therefore vacated pending appeal. It is, however, still persuasive authority in the federal courts.

12

business operations"), *overruled by implication on other grounds by Seminole Tribe v. Florida*,

517 U.S. 44, 59-66 (1996). BMS cannot, does not, and presumably will not suggest that *any* PRs

worked at the management level, formulated policy, performed quality control, prepared BMS'

budget, or otherwise had the power to bind the company. PRs carried out the day-to-day

operations of BMS and therefore do not work in an administrative capacity.[13] BMS' merits

arguments to the contrary are without merit.[14]

---

[13] *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (employer must establish that the employee "engages in 'running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs") (citing *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990)); *Relyea v. Carman, Callahan and Ingham, L.L.P*, 2006 WL 2577829, *5 (E.D.N.Y. 2006) ("Plaintiffs applied existing policies and procedures on a case-by-case basis. Their duties do not involve the crafting of those policies, but rather the application of those policies. As a result, Plaintiffs are better described as 'production,' rather than 'administrative' workers, and they are not exempt from the FLSA") (citation omitted); *Casas v. Conseco Fin. Corp.*, 2002 WL 507059, at *7 (D. Minn. Mar. 31, 2002) (loan originators primarily involved with "the day-to-day carrying out of the business" rather than "the running of [the] business [itself]" or determining its overall course or policies," were not exempt administrative employees); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903, 906 (3rd Cir. 1991) ("inside salespersons" did not qualify for the administrative exemption; "only employees whose work substantially affects the structure of an employer's business operations and management policies may be characterized as administrative workers"); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1231 (5th Cir. 1990) (television news producers, station directors, and assignment reporters are not exempt administrative employees); *Adams v. Dep't of Juvenile Justice*, 1996 WL 82404, *5 (S.D.N.Y. Feb. 26, 2006) (house parents for the Department of Juvenile Justice are not exempt); *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 405 (6th Cir. 2004) (environmental specialist for nuclear power company); *Neary v. Metro. Prop. and Casualty Ins. Co.*, 517 F.Supp.2d 606, 615 (D. Conn. 2007).

The Department of Labor has also emphasized that the administrative exemption does not apply to employees "engaged in carrying out the employer's day-to-day activities rather than in determining the overall course and policies of the business." *See, e.g.*, DOL Opinion Letter, 1997 DOLWH LEXIS 43, *7 (Sept. 12, 1997) (police investigators are not exempt under the administrative exemption because "the specific investigation activities performed by the employees would appear to be more related to the ongoing day-to-day production operations of the firm than to the management policies or general operations of the firm"); DOL Opinion Letter, 1999 DOL WH Lexis 54 (May 17, 1999) (mortgage loan officers "who develop[ed] new business for the employer by contacting prospective borrowers," worked to get the loan application created and approved, and were "subject to very little supervision" were carrying out the employer's day-to-day activities and were not administrative employees); DOL Opinion Letter, 1999 DOL WH Lexis 115 (Oct. 25, 1999) (channel account executives and new business account executives whose job duty was to work on and obtain channel direct sales were not administrative employees).

[14] BMS claims that *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997) and *Dalheim v. KDFW-TV* and the implementing regulations list "promoting sales" as an example of an exempt administrative activity. (Def. Opp. 22.) But Defendant fails to recognize that, although the DOL preamble to its revised regulations cites *John Alden*, the DOL also cites *Martin v. Cooper* and *Casas v. Conseco Finance*, cases which support Plaintiff's position that BMS cannot meet its heavy burden to show that PRs are exempt administrative employees because while they promote individual sales, they do not promote sales *generally* as required by the regulations. As the DOL explained:

An employee whose primary duty is sales promotion within the meaning of section 541.205(b) engages in

13

In any event, at this juncture the Court need not resolve the merits. It is enough that all PRs are similarly situated with respect to these common legal issues.

>    **b.      PRs Do Not Exercise Discretion With Respect to Matters of Significance**

Plaintiff believes that the Court will never reach the second prong: whether the employer's primary duty requires the exercise of "discretion and independent judgment" with respect to matters of significance, 29 C.F.R. § 541.200. But even here, BMS fails to demonstrate the existence of any material variations among PRs. If nothing else, BMS' brief makes plain that *all* PRs make the same kinds of decisions, choices, and plans in their jobs.[15] Whether these actions constitute the exercise of "discretion and independent judgment" as to significant matters as required by law is of course, potentially, one of the merits issues in the case.[16] What matters

---

marketing activity geared to furthering the company's overall sales effort, and is not engaged in the ordinary day-in-day-out selling activity directed at making specific sales. Examples of employees engaged in administrative sales promotion work would include those performing public relations or advertising, those who design and/or organize a company's overall sales campaign, or those who advise management on general sales policy, or formulate such policy.

DOL Opinion Letter, 1997 WL 970727 (July 23, 1997) (citing *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903 (3rd Cir. 1991)); *see also Casas v. Conseco Finance Corp.*, 2002 WL 507059, at *9 (distinguishing *John Alden* because the employees in *John Alden* promoted "customer sales *generally*" and finding that those involved in promoting only to individual customers are not exempt because they are not engaged in the "broader and more policy-oriented function of 'promoting sales' or 'representing the company' within the meaning of the regulations). The employees in *Reich* and *Dalheim* promoted sales *generally*, had the power to commit the company to large group sales and negotiate rates, and had managerial responsibility. That is not this case.

[15]  Throughout the entire fact section (Def. Opp. 4-9) and in the section on the administrative exemption (Def. Opp. 25-26), Defendant describe tasks that all PRs perform without noting any differences between PRs. Only on two pages does Defendant attempt to point out (immaterial) differences between PRs (Def. Opp at 28-29).

[16]  On the merits, which the Court should not reach at this stage, Defendant relies primarily on *Cote*, 558 F.Supp. 883, and *Reich*, 126 F.3d 1, as well as two DOL Opinion Letters. (Def. Opp. 23-26.) As to the finding in *Cote* that plaintiffs exercised discretion, the opinion is sparse on detail, and there is no evidence in the opinion that the job duties of a Burroughs Wellcome sales rep in 1982 have any similarity to the duties of a BMS PR in the highly-regulated environment of the 21st Century. In *Cote*, the Court relied on the fact that a "detail person was expected to use a wide degree of discretion in deciding how to encourage use of the product." *Cote*, 558 F. Supp. at 887. BMS' compliance handbooks, as well as the testimony of its deponents and the PRs' declarations, demonstrate that its PRs today are constrained by FDA oversight and regulation, Congressional oversight, product liability suits, Latham Act suits, and qui tam suits. (*See* Pl.'s Br. 8-12.) Due to these restraints, BMS PRs must follow strict guidelines when promoting products and, unlike the PRs of the 1980s, do not have a wide degree of discretion.

here is that the nature of *all* PRs' activities in these areas is the same. At this juncture, it does not

matter how much discretion the PRs have because the amount of discretion is fundamentally

uniform. In addition, whether the PRs' "discretion" is with regard to "matters of significance" is

also the same for all PRs.

      Defendants' reliance on *Evancho v. Sanofi-Aventis U.S. Inc.*, 2007 WL 4546100

(D.N.J. Dec. 18, 2007) is misplaced. *Evancho* was wrongly decided, contained limited analysis,

and the decision depended in part on facts not at issue here.[17] In any event, two decisions

decided this week, involving PRs in other pharmaceutical companies, granted 216(b) notice. *See*

*Schaefer-Larose*, No. 07-1133 (Ex. A) and *Ruggeri*, No. 06-1985 (Ex. B).

      Defendant claims generally that courts refuse to certify exempt/nonexempt

---

    The DOL opinion letters from the *1940s* are similarly distinguishable. The 1940s "medical detailists" are not the BMS PRs of today. The 1940 "medical detailists" were described as "experts" who "train personnel, make special surveys and reports," were "consulted with respect to individual nutritional problems encountered by hospitals and physicians," and "instruct the firm's salesmen in such technical matters as disease prevention." (Def. Ex. 1.) BMS PRs do none of these things. These "medical detailists" appear more akin to members of the marketing teams or training departments of BMS.

    *Reich*, 126 F.3d 1, is also distinguishable because the John Alden representatives, unlike the BMS PRs were able to choose what product to promote, could fashion bid proposals that met the needs of the agent's customers, and were not required to follow a prescribed technique when promoting their products.

    When the time comes, Plaintiff will present significant case law to demonstrate that the type of discretion that BMS PRs have is not the type encompassed by the regulations because PRs are highly regulated, and their work involves the use of skills and the application of known standards and established policy. *See, e.g.*, DOL Opinion Letter, 1997 DOLWH LEXIS 43, *9 (Sep. 12, 1997) (police investigators are not exempt under the administrative exemption because "the work of investigators typically involves the use of skills and the application of known standards or established procedures, as distinguished from work requiring the exercise of discretion and independent judgment"); *Schaefer v. Indiana Mich. Power Co.*, 358 F.3d 394 (6th Cir. 2004); *Ale v. Tennessee Valley Auth.*, 269 F.3d 680 (6th Cir. 2001); *Casas*, 2002 WL 507059; *Robinson-Smith v. Gov't Empl. Ins. Co*, 323 F.Supp.2d 12 (D.D.C. 2004).

[17] First, the *Evancho* decision was primarily based on the sales exemption – the court found differences between the PRs in the proposed class because while some PRs merely provided information to doctors, PRs selling dermatological products actually sold the products directly to the doctors. *Evancho*, 2007 WL 456100, at *3. BMS, however, has admitted that not one of its PRs actually sells products to anyone. *Evancho* also failed to address the first prong of the administrative exemption, even though that prong alone could be dispositive. Defendants also rely upon *Silverman v. SmithKlein Beecham*, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007). Certification in that case, however, was denied without prejudice, with the expectation that it would be granted once more evidence was before the court. In that case, plaintiffs relied only on declarations and did not have the benefit of depositions and documents supporting their claims as the plaintiff does here.

misclassification cases because the independent judgment/discretion inquiry requires "a court to conduct a fact-specific individualized inquiry into each employee's duties and responsibilities." (Def. Opp. 23, 31.) The cases Defendant relies upon, however, support no such proposition.[18] Where Plaintiff has made the requisite showing of similar job duties, courts have not hesitated to order notice-stage certification in misclassification cases, including "administrative" exemption cases, and cases involving multiple types of employees working in various locations. *See, e.g.*, *Neary v. Metro. Prop. and Casualty Ins. Co.*, 517 F.Supp.2d 606, 620-22 (D. Conn. 2007) (defendant's claim that "individualized inquiry is necessary" to resolve administrative exemption "does not preclude certification at this first stage") (collecting cases).[19]

### 3.    Highly Compensated and Motor Carrier Exemptions

BMS asserts that the "exemption" for certain highly-compensated employees raises individualized issues. Even assuming that BMS' invocation of this exemption can survive

---

[18]  First, many of the cases are not notice stage collective actions. *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493 (D.N.J 2000); *King v. West Corp.*, 2006 WL 118577, *13 (D. Neb. Jan. 13, 2006); *Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *3 (C.D. Cal. March 1, 2004).

Second, in *Mike v. Safeco Ins. Co.*, 274 F.Supp.2d 216, (D.Conn 2003), *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009 (N.D. Ind. 2005), *Aguire v. SBC Commc'ns*, 2007 WL 772756 (S.D.Tex. March 12, 2007), *Aguire v. SBC Commc'ns*, 2006 WL 964554 (S.D.Tex. April 11, 2006), and *Diaz v. Elecs. Boutique*, 2005 WL 2654270 (W.D.N.Y. 2005), the courts declined to certify a class because the courts would then be required to determine the percentage of time the employees spent performing exempt work. Here, all PRs perform the same tasks and plaintiffs allege that *all* of the work performed was non-exempt.

Certification in *Dean v. Priceline.com*, 2001 WL 35961086, *2 (D.Conn. June 6, 2001) and *Wombles v. Title Max*, 2005 WL 3312670 (M.D. Ala. Dec. 7, 2005) was denied because the proposed classes consists of a group of individuals with different jobs, different responsibilities, and different duties.

[19]  *See also Ruggeri*, No. 06-1985, at 14 (Ex. B) (rejecting this argument with respect to PRs); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2007 WL 707475 (N.D. Cal. Mar. 6, 2007); *Morden v. T-Mobile USA, Inc.*, 2006 WL 2620320 (W.D. Wash. 2006); *Gerlach v. Wells Fargo & Co.*, 2006 WL 824652 (N.D. Cal. 2006); *Ingersoll v. Royal & Sunalliance USA*, 2006 WL 859265 (W.D. Wash. Feb. 10, 2006); *Scott v. Aetna Servs. Inc.*, 210 F.R.D. 261 (D. Conn. 2002); *Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000); *Stanfield v. First NLC Fin. Servs., LLC*, 2006 WL 3190527 (N.D. Cal. Nov. 1, 2006); *Bosley v. Chubb Corp.* 2005 WL 1334565 (E.D. Pa. June 3, 2005); *accord Martin v. Cooper Elec. Supp. Co.*, 940 F.2d 896 (3d Cir. 1991) (representative action maintained by Secretary of Labor on behalf of class of "inside salespersons" improperly classified as "administrative" exempt).

a challenge that the exemption itself is *ultra vires*,[20] the $100,000 annual compensation component, which is easily determined from payroll records, of this defense raises the *exact* same uniform questions about the exempt/non-exempt status of the PRs' common core duties and responsibilities that the administrative exemption does. *See* 29 C.F.R. § 541.601.

BMS' argument that PRs are covered by the Motor Carriers Act ("MCA") exemption is even more far-fetched. The MCA is a narrow FLSA exemption designed to ensure the safety of the federal highways and to prevent overlapping jurisdiction between the DOL and the Department of Transportation. The MCA exemption only covers "carriers" – businesses that either provide transportation for compensation or that transport property in furtherance of a business venture. *See* 49 U.S.C. § 13102(12-13). The MCA exemption is further limited to "those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(b)(2). BMS cannot meet its burden to prove that it is a "carrier" or that PRs engaged in the requisite "class of work." BMS is not a "carrier" over which the Secretary of Transportation could assert jurisdiction. And PRs did not cross state lines while "hauling" or "transporting" property in the sense contemplated by the exemption. In any event, these questions would be resolved on a common basis for all PRs who drove across state lines. BMS also concedes that the MCA cannot apply to claims after August 2005 because the act was amended to add a vehicle weight requirement of 10,000 pounds. (Def. Opp. 32.)

---

[20] Congress delegated authority to the Department of Labor to define and delimit the executive, administrative, professional and outside sales exemptions, but not a "highly compensated employee" exemption.

17

**E.    Interest in the Lawsuit is Not a Factor in the Second Circuit At the Preliminary Notice Stage**

BMS claims that people must opt-in to the case *before* receiving notice of their right to opt-in to the case.[21]  This almost perfect Catch-22 thankfully has no support anywhere in the Second Circuit or in the FLSA itself.  *Neary*, 517 F.Supp.2d at 622-23 ("identification" of "other potential class members who would want to participate in this action" "is not required in the Second Circuit" and distinguishing cases relied upon by BMS).[22]  Section 216(b) says only that plaintiffs seeking certification must be "similarly situated" to those who will receive notice and an opportunity to opt-in.

Courts are understandably leery of the idea that plaintiffs be required to demonstrate that unknown potential plaintiffs want to join a case before any attempt is made to notify them that a case is even pending.[23]  The entire purpose of FLSA notice is to disseminate effective notice to potential plaintiffs so that they *can* decide whether to opt in.  *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *id.* at 170 ("Congress has stated its policy that

---

[21]  As it happens, three people have opted in even without notice.  (*See* Docket Entries 34-36.)

[22]  At the notice stage, the majority of courts in other circuits are also hostile to the idea that plaintiffs should be required to demonstrate a desire to join the case on the part of unknown potential plaintiffs.  *See e.g. Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (the language in *Dybach v. Florida Dept. of Corrs.*, 942 F.2d 1562, 1567, is *dicta* that "appears to conflict with the United States Supreme Court's position that the Act should be liberally 'applied to the furthest reaches consistent with congressional direction.'") (citing *Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)); *Dominguez v. Don Pedro Rest.*, 2007 WL 271507, at *2 (N.D. Ind. Jan. 25, 2007); *Kautsch v. Premier Communs.*, 504 F. Supp. 2d 685, 690 n.1 (W.D. Mo. 2007); *Douglas v. GE Energy Reuter Stokes*, 2007 WL 1341779, at *7 (N.D. Ohio 2007); *Taillon v. Kohler Rental Power, Inc. ex rel. Kohler Col*, 2003 WL 2006593, at *3 (N.D. Ill. April 29, 2003) (there is no "independent requirement of proof of desire to join in the action" at the notice stage).

[23]  Defendant points to media attention, advertising, and the fact that BMS turned over the names of approximately 350 employees to Plaintiff.  But Plaintiff received those names in order to contact witnesses and expressly told the Court that she would not solicit those individuals.  Plaintiff therefore did not solicit.  Without waiving the privileged nature of attorney-client communications, Plaintiff can also fairly note the fear that any PR has of suing an employer and being blacklisted in the industry, and the relative ease and anonymity of being part of a crowd of hundreds or thousands who opt in after notice.

. . . plaintiffs should have the opportunity to proceed collectively."). Consistent with

*Hoffmann-La Roche*, notice is appropriate here to inform SRs of their potential legal rights.

## II.    EQUITABLE TOLLING IS WARRANTED

Tolling from the date of the filing of the Complaint (June 28, 2007) should be

granted to serve the FLSA's broad remedial purpose. Since the filing of the Complaint, BMS has

known the nature of claims and the identity of every potential plaintiff and is certainly not

prejudiced by the tolling of the statute of limitations. The interests in certainty and preservation

of evidence that animate statutes of repose are not implicated here.[24] The only reason potential

class members are not aware of their rights is because Defendant refused to provide their names

and contact information. For these reasons, in FLSA collective action cases, courts routinely toll

the status of limitations to the date of the filing of the complaint if the defendant refuses to

provide the names of all class members. *See e.g., Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D.

530, 542-43 (N.D. Cal. April 11, 2007) (tolling statute because defendant's failure to provide the

contact information for potential class members was sufficient "misconduct" to warrant equitable

tolling as of the date of the filing of the complaint); *Boldozier v. Am. Family Mut. Ins.*, 375

F.Supp.2d 1089, 1093 (D. Colo. 2005) (same).

## III.    PLAINTIFF'S PROPOSED NOTICE

While Plaintiff believes that her proposed notice is adequate, Plaintiff consents to

---

[24] For these reasons, cases cited by Defendant that do not involve FLSA collective actions are inapposite. The one FLSA case BMS cites, *Jacobsen v. The Stop & Shop Supermarket Co.*, 2004 WL 1918795 (S.D.N.Y. Aug. 27, 2004) (J., Cote) was at the summary judgment stage, not the notice stage. The court had provided notice to all those employed three years prior to the filing of the complaint. Those employees who had opted in were therefore provided the opportunity to explain why they had not filed earlier. At a minimum, we respectfully request that notice be provided to all those employed three years prior to the filing of the Complaint so that they can explain why they did not opt-in earlier. We also respectfully request that the Court reconsider its opinion in *Jacobsen* given the well-reasoned cases cited above, the broad remedial purposes of the FLSA, and the lack of prejudice to the Defendant.

19

Defendant's suggestion that the Court order the parties to meet and confer in good faith to draft a

mutually agreed-upon notice that can be jointly submitted to the Court for approval.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court grant

Plaintiff's motion for conditional certification, notice, discovery, and equitable tolling.


Dated: February 29, 2008
New York, New York


Respectfully submitted,

By:_____

Ilann M. Maazel (IM 5724)
Elizabeth S. Saylor (ESS 8091)
Elora Mukherjee (EM 0921)
Jonathan S. Abady (JSA 5147)
**Emery Celli Brinckerhoff & Abady LLP**
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Phone: 212-763-5000
Fax: 212-763-5001

James A. Jones
**Gillespie, Rozen, Watsky & Jones, P.C.**
3402 Oak Grove Ave.
Suite 200
Dallas, Texas 75204
Phone: (214) 720-2009
Fax: (214) 720-2291
*Seeking Pro Hac Vice*

David Sanford
Stefanie Roemer
**Sanford, Wittels & Heisler, LLP**
1666 Connecticut Avenue, North West
Suite 310
Washington, DC 20009

Phone: (202) 742-7780
Fax: (202) 742-7776
*Admitted Pro Hac Vice*

Steven Lance Wittels
**Sanford Wittels & Heisler, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Phone: (646) 723-2947
Fax: (646)723-2948
*Seeking Pro Hac Vice*

Eric B. Kingsley
**Kingsley & Kingsley**
City National Bank Building, 7th Floor
16133 Ventura Boulevard
Encino, CA 91436
Phone: (818) 990-8300
Fax: (818) 990-2903
*Seeking Pro Hac Vice*

Ira Spiro
Gregory N. Karasik
**Spiro Moss Barnes LLP**
11377 West Olympic Boulevard, 5th Floor
Los Angeles, CA 90064
Phone: (310) 235-2468
Fax: (310) 235-2456
*Seeking Pro Hac Vice*

*Attorneys for Plaintiff and Proposed*
*Collective Action Members*

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
BETH AMENDOLA, on behalf of herself and
others similarly situated,

INDEX NO: 07-CV-6088 (DLC)

FLSA COLLECTIVE ACTION

                    Plaintiffs,

                                                    AFFIDAVIT OF SERVICE

        v.


BRISTOL-MYERS SQUIBB COMPANY,
and Does 1 through 20, inclusive,


                    Defendants.
------------------------------------------------------x

        I, Kelly Stefanco, a Legal Assistant at Emery Celli Brinckerhoff and Abady LLP,
hereby affirm under penalty of perjury that I am not a party to the action, am over the age of
eighteen years old and reside in the County of New York, New York:

        On February 29, 2008, I caused to be served true and accurate copies of
**Plaintiff's Memorandum of Law in Further Support of Motion for 216(b) Notice** and
**Declaration of Elizabeth S. Saylor in Further Support of Motion for 216(b) Notice** by
electronic mail through the ECF system upon the following individuals:

                    Bettina Plevan, Esq.
                    Josh Alloy, Esq.
                    Susette Ivanova. Esq.
                    Proskauer Rose LLP
                    1585 Broadway
                    New York, New York 10036

Dated:  New York, New York
        February 29, 2008

                                                    _Kelly Stefanco_
                                                    Kelly Stefanco


Sworn To Before Me This
29th Day of February, 2008

_____
        NOTARY PUBLIC

                ELIZABETH  SAYLOR
            Notary Public, State of New York
                    No. 02SA6081608
                Qualified in Kings County
            Commission Expires Oct. 7, 20 10