# EXHIBIT C

CASE NO. 07-56577

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

GINA D'ESTE, on behalf of herself
and others similarly situated,

Plaintiff-Appellant

v.

BAYER CORPORATION,

Defendant-Appellee

_____

On Appeal from the
United States District Court
Central District of California

_____

BRIEF OF PLAINTIFF/APPELLANT
GINA D'ESTE

_____

James A. Jones
**GILLESPIE, ROZEN, WATSKY & JONES, P.C.**
3402 Oak Grove Ave.
Suite 200
Dallas, Texas 75204
Telephone:  (214) 720-2009
Facsimile:   (214) 720-2291

*Attorney for the Plaintiff/Appellant*

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     Defendant-Appellee Bayer Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     Plaintiff-Appellant Gina D'Este . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     How Pharmaceutical Companies Such as Bayer Sell and Distribute Their
          Products . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     How Pharmaceutical Companies Such as Bayer Promote Their Products . . 4

     The Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     The District Court's Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     What is "Selling"? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     What do Pharmaceutical Reps Do? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

     The FLSA's Narrow Construction of the Outside Sales Exemption . . . . . 20

The California Supreme Court's Narrower Construction
of the Outside Sales Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

The District Court's Broad Construction of the Outside Sales Exemption
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

A Proper Application of a Narrow Construction
of California's Outside Sales Exemption . . . . . . . . . . . . . . . . . . . . . 33

The District Court's Flawed Logic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Statement of Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# Table of Authorities

## Cases

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005) . . . . . . . . . . . . . . . . . 26, 32

*Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 2

*California Grape & Tree Fruit League v. Industrial Welfare Commission*, 268 Cal. App. 2d 692 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005) . . . . . . . . . . 15, 16

*Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 2007 WL 3243861 (Cal. Nov. 5, 2007) 15

*Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 337 (6th Cir. 1970) . . . . . . . . . . . 37

*In re Brand Name Prescription Drug Antitrust Litigation*, 186 F.3d 781 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

*Jewel Tea Co. v. Williams*, 118 F.2d 202 (10th Cir. 1941) . . . . . . . . . . . . . . 41, 42

*Keyes Motors v. DLSE* (1987) 197 Cal. App. 3d 557 . . . . . . . . . . . . . . . . . . . 38, 39

*McIntosh v. Aubry (Pricor, Inc.),* 14 Cal. App. 4th 1576 (1993) . . . . . . . . . . . . . 30

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (Cal. 2000) . . . . . . . . . . . . . . . 42

*Nordquist v. McGraw Hill Broadcasting Co.,* 32 Cal.App.4th 555 (1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 31

*Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir. 1995) . . . . . 2, 3

*Paykar Constr., Inc. v. Bedrosian*, 71 Cal. App. 4th 803 (2nd Dist. 1999) . . . . . 16

*Perine v. ABF Freight Systems, Inc.*, 457 F.Supp.2d 1004 (2006) . . . . . . . . . . . 37

*Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785 . . . 18, 26, 27, 28, 31, 32, 37, 42

*Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975) . . . . . . . . . . . . . 29

*Special Devices, Inc. v. OEA, Inc.*, 117 F.Supp.2d 989 (C.D. Cal. 2000) . . . . . . 17

*The Regents of the Univ. of California v. Hansen*, 1999 WL 33268423 (E.D. Cal. Nov. 8, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Stout*, 1990 WL 121349 (E.D. Pa. Aug. 17, 1990) . . . . . . . . . . 20

## Statutes

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

28 U.S.C. § 1332(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

29 U.S.C. §218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Cal. Bus. & Prof. Code §§ 17200 - 17208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 1197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 1199 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code § 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -vii-

Cal. Lab. Code §1171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21, 33

Cal. Lab. Code §510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 27, 32, 33

## Regulations

29 C.F.R. § 541.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

29 C.F.R. § 541.506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 C.F.R. §541.503 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 C.F.R. §541.504(a) (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 C.F.R. §541.504(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. §541.504(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. §541.504(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

29 C.F.R. §541.505(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Code Regs. tit. 8 §11010 2(J) ("Wage Order 1-2001") . . . . . . . . . . 15, 17, 21

Rules

FED. R. CIV. P. 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

FED. R. CIV. P. 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Evid. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Other Authorities

*Black's Law Dictionary* 972 (5th ed., 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Black's Law Dictionary* (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Black's Law Dictionary* (7th ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

DLSE Opinion Letter, "Applicability of Outside Sales Exemption to Salesperson Who Sell Tract Homes While Based in a Model Home or Trailer" (9/9/1998) . . 41

DOL Fact Sheet #17F: *Exemption for Outside Sales Employees Under the Fair Labor Standards Act (FLSA)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*DOL Field Operations Handbook*, 7/28/65, ¶22e04, at WH66-89 . . . . . . . . . . . 25

*Oxford English Dict.* (2d ed. CD-ROM 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Webster's 3rd New World International Dictionary*, unabridged edition, G + C Merriam & Co (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Webster's Unabridged New International Dictionary* 1682 (2d ed., 1961) . . . . . 17

<u>Statement of Jurisdiction</u>

(A)    Plaintiff-Appellant Gina D'Este  brought this wage & hour class action case in the Superior Court of the State of California for the County of Los Angeles, pursuant to California Labor Code §§ 201, 202, 203, 226.7, 510, 512, 1194, 1197, and 1199 seeking proper overtime compensation, unpaid meal and rest period compensation, injunctive and other equitable relief, and reasonable attorneys' fees and costs, and pursuant to California Business & Professions Code §§ 17200 - 17208, seeking injunctive relief, restitution, and disgorgement of all benefits defendants enjoyed from their failure to pay overtime and meal period compensation.  Defendant-Appellee Bayer Corporation  removed this case to the United States District Court for the Central Court of California in accordance with 28 U.S.C. § 1441(b) on the basis of diversity of citizenship and satisfaction of the amount in controversy requirement.  28 U.S.C. § 1332(a).  Plaintiff D'Este, at the time this action was commenced was (and is) a citizen of the State of California. Defendant Bayer, at the time this action was commenced, was (and is) incorporated in the State of Indiana with its principal place of business in the State of Pennsylvania.

(B)    Plaintiff-Appellant D'Este appeals the district court's grant of summary judgment dismissing all of her claims against Bayer.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

(C)    This is an appeal from a final judgment entered by the district court on October 9, 2007.  Notice of Appeal was filed on November 2, 2007.

(D)    This is an appeal from a final judgment that disposes of all parties' claims.

<u>Statement of Issues</u>

Did the district court commit reversible error when it decided as a matter of law that Gina D'Este, while employed by Bayer Corporation as a Pharmaceutical Representative, was exempt under California's mandatory overtime laws as an outside salesperson?

In the
United States Court of Appeals
for the Ninth Circuit

_____

No. 07-56577

_____

Gina D'Este, on behalf of herself
and others similarly situated,
Plaintiff-Appellant,

vs.

Bayer Corporation,
Defendant-Appellee.

_____

On Appeal from the United States District Court for the
Central District of California
_____

Statement of the Case

Gina D'Este is a former Pharmaceutical Representative employee of Bayer

Corporation.  Bayer misclassified Ms. D'Este as exempt from overtime laws and

thus did not pay her overtime wages as required by California law.  D'Este

brought this case as a class action on behalf of herself and all similarly situated

Pharmaceutical Representatives to recover unpaid overtime wages.

This action was filed in the Superior Court of the State of California in and for the County of Los Angeles on April 25, 2007. (ER Tab 1, pp. 1-2). On or about May 16, 2007, Defendant-Appellee Bayer Corporation removed this matter to the United States District Court for the Central District of California. (ER Tab 1). On October 9, 2007, the district court granted summary judgment for the defendant. (ER Tab 80). This appeal was timely filed on November 2, 2007. (ER Tab 83).

Statement of Facts

Defendant-Appellee Bayer Corporation

Defendant-Appellee Bayer Corporation ("Bayer") is a wholly-owned subsidiary of a German multi-national corporation of the same name that, among other things, manufactures and sells pharmaceutical products. (ER Tab A, pp. 1-3).[1] Bayer primarily distributes those pharmaceutical products through

---

[1]    Defendant Bayer's Annual Form 20-F Report for 2002 (ER Tab A) was filed with the Securities and Exchange Commission on June 27, 2003. Because this document is not formally part of the record below, Plaintiff requests, pursuant to Fed. R. Evid. 201(d), that this Court take judicial notice of this document, *see id.* 201(f) ("[j]udicial notice may be taken at any stage of the proceeding"), specifically its description of Bayer's markets and distrubution and the pressure exerted on sales and pricing by managed care groups and other large health care providers as set forth on page 18, as ascertainable adjudicative facts. *See Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) (taking judicial notice on appeal of statements made in administrative hearing transcript pursuant to Fed. R. Evid. 201); *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 n.5 (9th Cir.

wholesalers, pharmacies and hospitals.  (ER Tab A, p. 8).  One of the major factors

that have affected, or may affect, Bayer's pharmaceutical business in North

America is "increasingly competitive price pressure, as managed care groups,

health care institutions, government agencies and other purchaser groups seek

price discounts and rebates for pharmaceutical products."  (ER Tab A, p. 7).

<u>Plaintiff-Appellant Gina D'Este</u>

Plaintiff-Appellant Gina D'Este ("D'Este") was employed by Bayer from

1991 through approximately November 1, 2004. (ER Tab 54, p. 2, ¶ 2).  During

the relevant time period she was employed as an "Anti-Infective Sales Specialist"

("AIS").  (ER Tab 34, p. 4, ¶ 6).  As an AIS, D'Este was responsible for

"detailing"[2] Levitra, Cipro and Avelox on behalf of Bayer.  (ER Tab 34, p. 9 ¶ 10).

---

1995) (taking judicial notice on appeal of an administrative decision and order),
*rev'd on other grounds*, 520 U.S. 548 (1996*); see also* Fed. R. Evid. 201(b) & (e).
This document and the statements contained on page 18 illustrate Bayer's view of
who it sells its products to -- *i.e,* managed care groups, health care institutions, and
the like -- and the competitive pricing pressure created by those groups and
institutions. Thus, this information is relevant to whether Plaintiff is in any manner
involved in sales given that Bayer itself does not identify physicians or even
patient/consumers as its customers. The facts contained in Bayer's Form 20-F
Report are "indisputably accurate" as they are Bayer's own statements contained in
a publicly filed document with a federal regulatory agency. Fed. R. Evid.
201(b)(2).

[2]    "Detailing" refers to Pharmaceutical Representatives such as Ms.
D'Este meeting with doctors and providing information about Bayer products to
those doctors in an attempt to influence the prescribing behavior of doctors in the

How Pharmaceutical Companies Such as Bayer Sell and Distribute Their Products

"Manufacturers of brand name prescription drugs generally do not sell directly to the retailers of their drugs, that is, to hospitals, HMO's, nursing homes, and pharmacies, but instead sell to wholesalers for resale to the retailers." *In re Brand Name Prescription Drug Antitrust Litigation*, 186 F.3d 781, 783 (7th Cir. 1999). Bayer apparently sells both to wholesalers as well as to some pharmacies and hospitals. (ER Tab A, p. 8). Prices charged to retailers vary based on an elaborate system of charge-backs to wholesalers that allows drug manufacturers to offer discounts to certain large scale retail purchasers of its prescription drugs, but not to others. *In re Brand Name Prescription Drug Antitrust Litigation*, 186 F.3d at 783-84.

How Pharmaceutical Companies Such as Bayer Promote Their Products

Pharmaceutical companies, including Bayer, engage in direct to consumer advertising via television, radio and print media. Like other pharmaceutical companies, Bayer also employs Pharmaceutical Representatives who detail its products to physicians seeking to influence and increase the number of prescriptions written for Bayer products. (ER Tab 34, pp. 17-19, ¶¶ 20-21; ER Tab 54, p. 2, ¶ 5). By influencing and increasing prescriptions, Bayer seeks to increase

hope that they will prescribe Bayer products. (ER Tab 54, pp. 2, 4, ¶¶ 5, 8).

demand for their products amongst the physician's patients, thereby increasing the number of purchases of Bayer products made by patients/consumers, thereby increasing demand amongst retailer sellers and thus increasing Bayer's sales to wholesalers. The employees who detail products to physicians are known generically as "Pharmaceutical Sales Representatives" ("Pharmaceutical Reps"). (ER Tab 38, p. 2, ¶ 3; ER Tab 54, p. 2, ¶¶ 2, 5). D'Este, as an AIS, was a Pharmaceutical Rep. (ER Tab 54, p. 2, ¶ 2).

Bayer has determined that the skills best suited for the one-on-one promotion of its products to physicians are, colloquially speaking, "sales" skills. Thus, Bayer trains its Pharmaceutical Reps in what it calls "sales" skills (ER Tab 34, pp. 13-14, ¶ 16), refers to its Pharmaceutical Reps as salespersons (ER Tab 38, p. 2, ¶ 3), calls the Pharmaceutical Reps as a group a "sales" force (ER Tab 34, p. 4, ¶ 4), and utilizes "sales-speak." (ER Tab 34, pp. 17-21, 24-25, ¶¶ 20, 22-23, 27).

Pharmaceutical Reps, however, do not engage in any transactional sale. (ER Tab 53, p. 13, ¶¶ 31-34; ER Tab 54, p. 3, ¶ 6). They do not sell Bayer products to doctors (*Id.*), doctors do not buy from them (*Id.*), they do not receive money or any other payments from doctors in exchange for Bayer products (*Id.*), doctors do not sign contracts with them (*Id.*), and doctors do not place any orders for Bayer products with or through them. (*Id.*). A Pharmaceutical Rep's primary

duty is to attempt to influence the doctors to prescribe Bayer prescription drug products.  (ER Tab 34, pp. 18-19, ¶ 21).  Of course, once a doctor writes a prescription, the sale to the patient/consumer, if any, takes place between the patient and a retail pharmacy.  And, well before any such sale of a specific Bayer product by a retail pharmacy to a patient/consumer occurs, that same Bayer product was sold by Bayer to an independent wholesaler or a large hospital or pharmacy chain.  Bayer's income from manufacturing and selling pharmaceutical products is generated exclusively by bulk sales to wholesalers and to some large hospitals and pharmacy chains.

<u>The Lawsuit</u>

D'Este filed this suit in Los Angeles County Superior Court as a class action alleging that Bayer had violated California's mandatory overtime requirements by failing to pay her and other similarly situated Pharmaceutical Reps overtime wages for all hours in excess of 40 in a workweek and 8 in a day.  Bayer removed the case to the Central District of California under diversity jurisdiction.  (ER Tab 1). The case was assigned to Judge John F. Walter, before whom was pending a related action against Bayer under the federal Fair Labor Standards Act ("FLSA").

Under the local rules of the Central District, Plaintiff was required to file her Motion for Class Certification within 90 days of the service of her Complaint.

During this 90 day period, the parties engaged in very limited discovery regarding certification issues. The parties did not, and indeed could not due to the condensed time frame, engage in, much less complete, full merits discovery. (ER Tab 66).

In the meantime, in the related FLSA case, Judge Walter – with no record before him from the Plaintiffs other than the skeletal evidence required to meet the low evidentiary threshold for collective action conditional certification under the FLSA – expressed scepticism about the merits of the case and invited Bayer to file a Motion for Summary Judgment. (ER Tab B, p. 6). Emboldened by a Judge who had seemingly already made up his mind prior to the review of any meaningful evidence, Bayer did not need a second invitation. Bayer filed Motions for Summary Judgment in both this action (CR Tab 32) and the related FLSA case.[3]

Along with her response to Bayer's Motion for Summary Judgment, D'Este filed a motion under FED. R. CIV. P. 56(f) to delay submission of Bayer's Motion for Summary Judgment because the parties had not begun, much less completed, merits discovery and because Bayer had failed to respond to the merits discovery

---

[3]    The FLSA case was subsequently dismissed at the joint request of the parties under FED. R. CIV. P. 41.

demands D'Este had served after the premature filing of their Motion for

Summary Judgment.  (CR Tab 62).  Notwithstanding the fact that no merits

discovery was ever conducted in this case, Judge Walter denied D'Este's 56(f)

motion and proceeded to rule on the merits of Bayer's Motion.  (ER Tab 79).

<u>The District Court's Opinion</u>

Having invited Bayer's motion, Judge Walter wasted little time deciding it.

A week after Bayer's motion was fully briefed, Judge Walter announced that oral

argument was unnecessary.  (ER Tab 74).  Two weeks later, Judge Walter decided

that discovery was not needed and simultaneously granted summary judgment

against Plaintiff dismissing the case in its entirety and denying Plaintiff's motion

for class certification as moot. (ER Tabs 79, 80).

Although Judge Walter acknowledged that Plaintiff's core contention in

opposition to Bayer's motion concerning the outside sales exemption was that she

did not "sell" anything, the district court undertook no effort to interpret the term

"selling" as utilized in the "outside sales" exemption to California's mandatory

overtime law or to then determine whether D'Este fit *plainly and unmistakably*

within the scope of that exemption.  Indeed, Judge Walter never so much as

mentioned, much less applied, the basic tenet that exemptions to California's

mandatory overtime laws must be strictly and narrowly construed.  Judge Walter

8

did not just ignore long-settled, indeed controlling, principles of overtime

exemption construction, he overruled them. "The Court disagrees with Plaintiff's

narrow interpretation of 'outside salesperson.'" (ER Tab 79, p. 5). Applying a

liberal construction to effectuate the "spirit and purpose of the exemption," (ER

Tab 79, p. 6), Judge Walter held that Plaintiff's job duties were analogous to sales

because (1) the language of sales was broadly employed by Bayer in describing

Plaintiffs' duties and skills, (2) physicians are essentially Bayer's customers, and

(3) a patient filling a prescription constitutes a "sale" for Bayer. (*Id.*).

      Finding that Bayer hired Ms. D'Este to be part of its "sales" team, evaluated

her on her "sales" ability, trained her in "sales" skills, and paid her – in addition to

her salary – incentive compensation the district court mischaracterized as

commissions,[4] the district court concluded that plaintiff must be an "outside

salesperson." Failing to recognize or even mention the distinction between

providing promotional information and actual sales, Judge Walter redefined by

analogy the basic product promotion work plaintiff performed into "sales" terms:

"Because patients are unable to obtain Bayer's products directly and must have a

prescription from a physician, Bayer directs the focus of its sales efforts at the

doctors who are responsible for making the purchasing decision on behalf of the

---

[4]    *See* discussion at pp. 38-39, *infra*.

patient" (ER Tab 79, p. 5); [e]ach prescription filled by a patient is a 'sale' for Bayer" (*Id.*)*;* "the doctors are the 'customers' of Bayer," (*Id.*); and, "[i]n this case, the 'buyer' is the doctor who has the capacity to 'place an order' for Bayer products . . . [and Plaintiff] was responsible for obtaining commitments from the doctors she called on to write additional prescriptions or orders for Bayer's products." (ER Tab 79, pp. 5-6).

"Quite simply," Judge Walter concluded, "Plaintiff and the other PRs employed by Bayer were hired and evaluated based on their abilities as salespeople, they received training through their employment on sales techniques, and their earnings were based in part on a commission determined by the total amount of products sold in their territory which were a direct result of the prescriptions written by the doctors they called on." (ER Tab 79, p. 6). Accordingly, the court granted Bayer's motion for summary judgment.[5]

------

[5]    Bayer had also moved for summary judgment on the basis that D'Este was exempt under the Administrative Exemption. Because D'Este did not work "at the level of *policy* or *general* business operations," but instead merely carried out the day-to-day operations of Bayer, D'Este could not meet the "directly related to managerial policies or general business operations" prong of the Administrative Exemption. Thus, summary dismissal could not have been properly granted on this issue, particularly in light of a recent California Appeals Court decision nearly directly on point. *Harris v. Superior Court*, 2007 WL 2325580 at *7 (2007). Since the district court's ruling in this case, the California Supreme Court has granted review in *Harris*. Given that California law on this issue is presently in flux and will shortly be addressed by the California Supreme Court, any decision

Judge Walter's decision to broadly construe the "spirit and purpose of the [outside sales] exemption," rather than the remedial purpose of the Labor Code itself, turns California's overtime law on its head.[6]

## Standard of Review

This Court must review Judge Walter's order granting Bayer's motion for summary judgment *de novo*. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1033 (9th Cir. 2005). Here, *de novo* review requires that all facts contained in the limited record allowed by Judge Walter are examined, and inferences drawn, in the light most favorable to Plaintiff. *Id.*

## Summary of the Argument

In cases of construction of statutory exemptions from California's mandatory overtime requirements, courts narrowly construe such exemptions against the employer asserting the exemption, applying the exemption only to those employees who fall plainly and unmistakably within its express terms. It is not for courts to determine what they would like the exemption to mean, but to

---

based on this issue at this point in time would be inappropriate without the opportunity for further discovery and briefing based on the California Supreme Court's forthcoming decision.

[6] It is the remedial purpose of the Labor Code that is to be liberally construed, *not* the exemption therefrom. *Nordquist v. McGraw Hill Broadcasting Co.,* 32 Cal.App.4th 555, 562 (1995).

apply the language of the exemption as written.  Regrettably, the district court

failed to apply this bedrock principle in ruling that plaintiff, who sold nothing to

anyone, fell within the scope of California's outside sales exemption.

This case is not difficult.  The district court's flawed opinion should be

summarily reversed.  Even a cursory review of Judge Walter's opinion reveals that

it is the product of a fundamental legal error.  Instead of construing the plain

language of the outside sales exemption to California's mandatory overtime laws

grudgingly, as is unquestionably required given the law's overriding remedial

purpose, Judge Walter did exactly the opposite.  He interpreted the *exemption*

broadly. That error permeates and drives the entire opinion.

Indeed, the opinion interprets the outside "sales" exemption so liberally that

it nearly swallows the presumptive rule commanding overtime protection.  By the

district court's lights, as long as an employee's job activities are generally directed

toward the ultimate goal of increasing sales of a product or service, however

attenuated or removed it may be from consummating an actual sale, that employee

is denied the protection of California's overtime law.  There is little to limit the

logical reach of the outside sales exemption so construed.  Even the employer's

own self-serving use of sales terminology to describe a job or job functions –

irrespective of reality on the ground – is apparently enough to warrant application

12

of the outside sales exemption.  Indeed, it appears that every employee who works outside the office and promotes, advertises or markets a product or service, is brought within the expansive scope of this exemption as interpreted by the district court.

Contrary to the district court's presumption, entitlement to overtime pay under California law is the *rule* and not the *exception*.  The California Labor Code reflects the legislative choice to protect employees by requiring employers to provide fair wages, including increased compensation for overtime.  *Everyone* who works more than 40 hours per week or eight hours per day is presumptively entitled to overtime wages.  While there are limited classes of employees that are exempt from the mandatory overtime compensation rule, the exemptions are narrowly and strictly construed against employers and in favor of employee coverage.  Exemptions apply *only* to employees who are "plainly and unmistakably" within the narrow scope of the exemption.

The district court's expansive construction and application of the outside sales exemption under California law in this case must be reversed for a separate and independent reason; the federal FLSA outside sales exemption clearly does not apply to Pharmaceutical Reps.  Judge Walter's opinion would lead to the untenable result that employees entitled to overtime under the FLSA would <u>not</u> be

13

entitled to overtime under California state law.  Yet, the Supreme Court of

California has held repeatedly that the California Labor Code – which was enacted

many years after the FLSA – was plainly intended to provide greater protections to

California employees than the FLSA, including employees who might otherwise

be exempt as outside salespersons under the FLSA.  The California Supreme

Court's position makes perfect sense.  The FLSA establishes the minimum federal

protections enjoined by workers nationwide.  It would make no sense for the

California Legislature to pass wage and hour laws that provide *less* protection than

the FLSA as any such state statute would be preempted by the FLSA and thus a

nullity.

The district court's judgment should be vacated and the case should be

remanded so that Plaintiff, and those she seeks to represent, can receive

appropriate compensation for their overtime hours.

<u>Argument and Authorities</u>

This appeal requires this Court to answer the following question: Does an

employee who does not directly sell any product or service to any person or entity,

but who merely engages in one-on-one promotion of her employer's products

incidental to sales made by others, engage in "selling" within the meaning of the

outside salesperson exemption to California's mandatory overtime requirements?

14

<u>What is "Selling"?</u>

California Labor Code section 510 requires employers to compensate non-exempt employees for the time worked in excess of the statutorily defined maximum hours.  Cal. Lab. Code §510.  Labor Code section 1171 exempts "any individual employed as an outside salesman . . ." Cal. Lab. Code §1171. California's Industrial Welfare Commission ("IWC") defines the term "outside salesperson" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business **selling tangible or intangible items or obtaining orders or contracts for products**, services or use of facilities."  Cal. Code Regs. tit. 8 §11010 2(J) ("Wage Order 1-2001") (Emphasis added).

When a statute or regulation does not specifically define a term, as the IWC's Wage Order does not specifically define "selling," such terms must be interpreted in accordance with their ordinary and common meaning.  *Alvarez v. IBP, Inc*., 339 F.3d 894, 904 (9th Cir. 2003) (citation omitted).[7]

_____

[7]        *See also Cleveland v. City of Los Angeles*, 420 F.3d 981, 989 (9th Cir. 2005) ("To determine the meaning of a term in a [FLSA] regulation [governing an overtime exemption], [the court] look[s] to the common meaning of the word") (citation omitted); *Gattuso v. Harte-Hanks Shoppers, Inc*., __ Cal. Rptr. 3d __, 2007 WL 3243861, at *7 (Cal. Nov. 5, 2007) ("Generally, the court first examines the statute's words, giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most

The ordinary, common meaning of the term "selling" is limited to the transactional model of a sale in which property is exchanged for consideration. *See Paykar Constr., Inc. v. Bedrosian*, 71 Cal. App. 4th 803, at 807 (2nd Dist. 1999) (the ordinary, common meaning of the term "sale" is "'[a] contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or the purchaser), by which the former, in consideration of the payment of promise of payment for a certain price in money, transfers to the latter the title and possession of property.'") (quoting *Black's Law Dictionary* (6th ed. 1990)); *Special Devices, Inc. v. OEA, Inc.*, 117 F.Supp.2d 989, 994 (C.D. Cal. 2000) ("A sale is 'a contract between parties to give and pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold.'") (citations omitted).

The Wage Order's terms "obtaining orders or contracts" are subject to similar interpretation. The ordinary meaning of "obtain" is to gain or attain possession of something. *The Regents of the Univ. of California v. Hansen*, No. Civ. S98-0715, 1999 WL 33268423, at *7 (E.D. Cal. Nov. 8, 1999) ("The

---

reliable indicator of legislative intent.") (citation omitted); *Paykar Constr., Inc. v. Bedrosian*, 71 Cal. App. 4th 803, 806-07 (2d Dist. 1999) (same). "When a statute does not define a term, a court should construe that term in accordance with its 'ordinary, contemporary, common meaning.'" *Cleveland*, 420 F.3d at 989 (citation omitted).

dictionary definition of "obtain" is "to gain or attain possession or disposal of, usually by some planned action or method.") (quoting *Webster's 3rd New World International Dictionary*, unabridged edition, G + C Merriam & Co (1976)); *United States v. Stout*, 1990 WL 121349 (E.D. Pa. Aug. 17, 1990) ("The ordinary meaning of 'obtained' connotes some act of acquisition, or procurement, i.e., the gaining of possession.") (quoting *Webster's Unabridged New International Dictionary* 1682 (2d ed., 1961); *Black's Law Dictionary* 972 (5th ed., 1979)).

The common definition of the term "orders" is "[a] written direction to pay money or deliver property, made by a person legally entitled to do so," *Oxford English Dict.* (2d ed. CD-ROM 2005), while the common meaning of "contract[]" is "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law," *Black's Law Dictionary* (7th ed. 1999). Thus, according to the common meaning of the terms by which the IWC has defined "outside salesperson,", to qualify for the outside sales exemption under California law, the employee must (1) work outside the employer's place of business, (2) working on actually consummating their own sales, (3) more than fifty percent of the time. The only issue in this case is whether Plaintiff's work involved her actually consummating her own sales.

17

This limited construction of the outside sales exemption is further compelled by the essential tenet of construction applicable to all exemptions to California's mandatory overtime requirements: "Exemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms.".  *Nordquist v. McGraw Hill Broadcasting Co.,* 32 Cal.App.4th 555, 562 (1995).  *See also  Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785, 794 ("under California law, exemptions from statutory mandatory overtime provisions are narrowly construed").

<u>What do Pharmaceutical Reps Do?</u>

Television advertisements for prescription drugs are ubiquitous.  The purpose of these advertisements is unmistakably clear – to encourage consumers to encourage their doctors to write them a prescription for these drugs and, secondarily, to encourage doctors who may see these advertisements to write prescriptions for these drugs.  Through these advertisements, the manufacturers of the drugs hope to increase demand for their products and thereby increase sales of their products at retail pharmacies, which then allows the manufacturers to manufacture more of the drug which they will sell to wholesalers who will in turn sell to retail pharmacies, which is in actuality how prescription drugs are sold and

distributed.[8]

Obviously, the ultimate purpose of these advertisements is to increase sales of the drug manufacturers' products by retail pharmacies. Yet no one could credibly argue that those involved in developing and making these commercials are involved in a narrow construction of "selling" – a transactional sale. They are rather involved in promotion, marketing or advertising, which while intended to impact sales, is not itself "selling."

The activities of Pharmaceutical Reps are much more akin to the "advertising/marketing" model than they are to any "sales" model. Pharmaceutical Reps, like advertisers and marketers, promote products in order to impact sales to be made by others, but they themselves do not make sales. Indeed, the primary difference between what Pharmaceutical Reps do and what the advertiser (or marketer) does is that the advertiser/marketer seeks to increase sales generally (on a "macro" basis), while Pharmaceutical Reps promote prescription drugs on a much more limited and individualized (or "micro") basis. The end result of both is

---

[8]    *See In re Brand Name Prescription Drug Antitrust Litigation*, 186 F.3d 781 (7th Cir. 1999) (discussing in some detail how pharmaceutical companies sell prescription drugs to wholesalers, who in turn sell the drugs to hospitals, nursing homes, HMO's and pharmacies, and the salespersons [not Pharmaceutical Reps] who negotiate pricing directly with retailers which will then result in charge-backs to the wholesaler to compensate for the discounted price negotiated with the retailer).

identical – increasing sales by retail pharmacies – although the scale is quite different.

### The FLSA's Narrow Construction of the Outside Sales Exemption

Even though Ms. D'Este's claims are brought under California's state wage and hour laws, and not under the FLSA, an analysis of the application of California's overtime laws and the outside sales exemption to employees like Pharmaceutical Reps – who perform targeted promotional work designed to influence sales to be made by others – is aided by an understanding of the treatment of such employees under the FLSA. The FLSA's treatment of such employees is relevant to an understanding of the differences between the California outside sales exemption and the FLSA outside sales exemption. Those fundamental differences make clear that the promotion work performed by Pharmaceutical Reps such as Ms. D'Este cannot be characterized as selling under California law. An understanding of the FLSA's treatment of such employees is also necessary to demonstrate that the result of the district court's ruling would be that the California outside sales exemption would be broader than, and thus less protective of employees than, the corresponding FLSA exemption.

Pharmaceutical Reps do not plainly and unmistakably fall within the scope of the outside sales exemption under the FLSA. The implementing regulations of

20

the FLSA make clear that promotional activity incidental to sales made by others, rather than one's own individual sales, is not outside sales work. *See* 29 C.F.R. §541.504(a) (2001); 29 C.F.R. §541.503 (2005).

Under the FLSA's definition of the "outside sales" exemption in effect at the time that §1171 was enacted and the Wage Orders were adopted,[9] an

---

[9]     The federal regulations as they existed in 2001 are the regulations most relevant to California's wage and hour laws. When the Wage Orders have specifically referred to federal regulations, they have referred to those in place in 2001, *see*, *e.g.*, Wage Order 1-2001, ¶ 1.(A)(1)(e), evidencing an intent by the IWC to interpret Wage Orders with regard to the federal regulations in place at the time the Wage Order is enacted.

Nevertheless, even if the post-2004 federal regulations are relevant, the result is identical. *See*, 29 C.F.R. § 541.503(b) (2007) ("Promotional activities [by manufacturers' representatives] designed to stimulate sales that will be made by someone else are not exempt outside sales work."). The Preamble to the new regulations makes clear that no change in this particular area was intended:

> [T]he Department does not intend to change any of the essential elements required for the outside sales exemption, including the requirement that the outside sales employee's primary duty must be to make sales or to obtain orders or contracts for services. An employer cannot meet this requirement unless it demonstrates objectively that the employee, in some sense, has made sales. . . .*Extending the outside sales exemption to include all promotion work, whether or not connected to an employee's own sales, would contradict this primary duty test.*

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22121,

employee's hours of work of a nature other than sales could not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer. 29 C.F.R. § 541.500.  However, in computing this percentage, any non-sales work performed incidental to one's own sales activities was considered sales work for purposes of the computation.  *Id.*

Promotion is specifically identified in the DOL outside sales regulations as non-exempt, non-sales work.  Promotion work does not "constitue[] making sales within the meaning of [the outside sales exemption]."  29 C.F.R. §541.505(d). "Nonexempt work is that work which is not sales work . . . ."  29 C.F.R. § 541.506.  Thus, when the regulations discussed below refer to promotion work as being non-exempt work, that means it is not sales work.  Promotion work, like other non-sales work such as delivery, can constitute sales work under the federal regulations only if it is conducted incidental to one's own sales.

The DOL regulations contain numerous examples of employees engaged in product promotion work with regard to sales to be made by others not being within the scope of the outside sales exemption.  Pharmaceutical Reps are manufacturer representatives, which are specifically covered in sections 504(b) and 504(c) of the regulations.  In §541.504(b)(2), the DOL states that manufacturer

_____

22162-63 (April 23, 2004) (emphasis added).

22

representatives "can be considered salesmen only if they are actually employed for the purpose of and are engaged in making sales or contracts. To the extent that they are engaged in promotional activities designed to stimulate sales which will be made by someone else the work must be considered nonexempt."  Likewise, in §541.504(c)(2), the DOL addressed manufacturer representatives whose job it is to convince retailers to buy from wholesalers ("jobbers" who in turn buy from the manufacturers): "The order in this instance is taken by the jobber's salesman after the manufacturer's representative has done the preliminary work which may include . . . talking to the retailer for the purpose of getting him to place the order for the product with the jobber's salesman. In this instance the sale is consummated by the jobber's salesman. The work performed by the manufacturer's representative is not incidental to sales made by himself and is not exempt work."

In §541.504(c)(3), the DOL addressed various scenarios involving another type of manufacturer's representative – the utility company representative:

> Another type of situation involves representatives employed by utility companies engaged in furnishing gas or electricity to consumers. In a sense these representatives are employed for the purpose of ``selling'' the consumer an increased volume of the product of the utility. This ``selling'' is accomplished indirectly by persuading the consumer to purchase appliances which will result in a greater use of gas or electricity. Different methods are used by various companies. In some

23

instances the utility representative after persuading the consumer to install a particular appliance may actually take the order for the appliance which is delivered from stock by his employer, or he may forward the order to an appliance dealer who then delivers it. In such cases the sales activity would be exempt, since it is directed at the consummation of a specific sale by the utility representative, the employer actually making the delivery in the one case, while in the other the sale is consummated in the sense that the representative obtains an order or commitment from the customer. *In another type of situation the utility representative persuades the consumer to buy the appliance and he may even accompany the consumer to an appliance store where the retailer shows the appliance and takes the order. In such instances the utility representative is not an outside salesman since he does not consummate the sale or direct his efforts toward making the sale himself. Similarly, the utility representative is not exempt as an outside salesman if he merely persuades the consumer to purchase an appliance and the consumer then goes to an appliance dealer and places his order.*

(Emphasis added).  The examples contained in §504(c)(3) make clear both that product promotion work done incidental to sales to be consummated by others is not sales work and that, to be considered a sale within the outside sales exemption, an order must be placed with or through the employee.  If an order is not placed with or through the employer's representative, that employee is not engaged in sales within the meaning of the outside sales exemption.

24

The product promotion/sales distinction is further clarified in the DOL's

Field Operations Handbook:

> 22e04  Soliciting business through a dealer.  *An*
> *employee whose duty is to convince a dealer of the value*
> *of his employer's service to the dealer's customers and*
> *who does not in fact obtain firm orders or contracts from*
> *either the dealer or his customers is not making sales*
> *within the meaning of FLSA Sec. 3(k).*  An example is
> merchant's contact men employed by finance companies
> who call at the place of business of retail merchants
> dealing in furniture or appliances and bring to the
> merchant's attention the finance service that the finance
> company is prepared to offer to any of the merchant's
> customers who are in need of money for purchases, and
> who lay the groundwork for a continuing relationship
> between the finance company and the merchant.  The
> finance man deals with the merchant and the merchant
> with his customers.  The finance man is not exempt
> under Reg 541.5, since he does not obtain orders or
> contracts from either the customers or the merchant.

*DOL Field Operations Handbook*, 7/28/65, ¶22e04, at WH66-89 (emphasis

added).  Just as finance companies' contact men "bring to the merchant's attention

the finance service that the finance company is prepared to offer to any of the

merchant's customers," the Pharmaceutical Reps merely bring to the physician's

attention the characteristics and qualities of their company's drugs.  Just as "[t]he

finance man deals with the merchant and the merchant with his customers," the

Pharmaceutical Reps deal with the physician and the physician with his patients.

The contact men and the Pharmaceutical Reps are involved in sales to be made by others, but because they do not actually make the sales, they are not "outside salespeople."

<u>The California Supreme Court's Narrower Construction<br>of the Outside Sales Exemption</u>

California's wage and hour laws are frequently more employee-protective than the FLSA. *See Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323-24 (2005). Indeed, the scope of protection afforded by California's overtime laws for workers who might arguably be exempt as outside salespersons under California law was held to by more protective of employees by the California Supreme Court in *Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785. *Ramirez* involved a route driver for Yosemite Water Co. who engaged in both exempt (sales) activities and non-exempt (delivery) activities. *Ramirez* is instructive insofar as it confirms that the type and nature of activities that qualify as "sales" under California's outside sales exemption are severely circumscribed – even more so than under the FLSA.

The Court of Appeals decision under review in *Ramirez* had utilized the federal regulations to determine that the delivery duties of the route driver were incidental to his own sales and thus, when combined resulted in exempt sales

26

activities at greater than the 50% required under the California statute.

The California Supreme Court reversed in *Ramirez,* explaining that state law differed from federal law "in that it does not contain any provision that reclassifies intrinsically nonexempt nonsales work as exempt based on the fact that it is *incidental to* sales. The language of the state exemption only encompasses work directly involved in 'selling ... items or obtaining orders or contracts.'" 20 Cal. 4th at 797.  Thus, the California Supreme Court specifically held that non-exempt, non-sales work could not under any circumstances be counted as exempt sales work under the California outside sales exemption because the California version of the outside sales exemption does not allow non-exempt work *incidental* to sales to be converted to sales work.  Accordingly, promotion work, which can be converted to exempt sales work under the federal scheme only by being conducted *incidental to* one's own sales work, cannot constitute "selling" under the California outside sales exemption.

In *Ramirez,* the California Supreme Court additionally held that the IWC, in defining the California outside sales exemption had intended to provide greater protection for California employees than under the federal exemption and that the Court of Appeals had erred in reaching a result under which California employees were afforded less, not more, protection than under the federal standard.  *Id.*

27

<u>The District Court's Broad Construction of the Outside Sales Exemption</u>

By inviting and then granting judgment summarily in favor of defendant Bayer before so much as a speck of merits based discovery had taken place, the district court committed a multitude of errors.  All warrant reversal.  Most, if not all, can be attributed to two fundamental flaws in the district court's reasoning: 1) a profound legal misapprehension infecting most every aspect of the opinion – that exemptions to California's overtime law were enacted to protect employers rather than employees, which inevitably led the district court 2) to expansively interpret the outside sales exemption in order to invent legal fictions that allowed the district court to squeeze Ms. D'Este within its broad construction of the exemption.

"The Court disagrees with Plaintiff's narrow interpretation of 'outside salesperson.'" (ER Tab 79, p. 5).  This statement really says it all.  This statement by the district court alone warrants reversal of the district court's ruling.  There is no more fundamental rule of construction of exemptions from California's mandatory overtime provisions than that such exemptions must be narrowly construed.  *Ramirez*, 20 Cal. 4th at 794.  The district court flagrantly disregarded this requirement.  The district court instead chose a different path – choosing to adopt an expansive definition, apparently premised on the presumption, as

unmistakable as it is wrong, that the *exemptions* to California's overtime requirements exist to protect employers from incurring overtime pay obligations.[10] Nothing short of such a fundamental error can explain why the district court:

- ignored the plain language of the outside "sales" exemption in favor of a strained definition of "sales" that includes *any* work activity that could eventually lead to the sale of a Bayer product by a retail pharmacy (ER Tab 79, pp. 4-6);

- accepted Bayer's ubiquitous and self-serving use of "sales" language to describe the job titles, daily activities, performance evaluations, and training of Plaintiff and other Pharmaceutical Reps as undisputed evidence that Plaintiff was engaged in "sales" (*Id.*);

- "disagree[d] with Plaintiff's *narrow* interpretation of 'outside salesperson'" in favor of a boundless "spirit and purpose" test (ER

---

[10]    The court of appeals in *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975) described a similar error: "The trial court, without discussing any of the regulations which the statute expressly make part of the law, seemed impressed with the value of the exemption to a company that employs drivers to deliver its products on an established given route.  In arriving at its findings of fact, the trial court overlooked completely the basic fact that [Plaintiff's] testimony was undisputed to the extent that he did no selling, in the sense that he had no face-to-face negotiation with a store owner or manager who was in the position of purchasing or ordering the products which Skipper was delivering."

29

Tab 79, pp. 5-6) (emphasis supplied);

• concluded that doctors are Bayer's customers even though they do not

use or buy Bayer's products from anyone, including Bayer's

Pharmaceutical Reps (ER Tab 79, p. 5);

• determined that each "prescription filled by a patient is a 'sale' for

Bayer  (*Id.*);

• concluded that "the 'buyer' is the doctor who has the capacity to

'place an order' for Bayer's product by writing a prescription for a

patient"  (*Id.*); and,

• held that the "Court's finding that [Pharmaceutical Reps] are properly

classified as 'outside salespeople' is consistent with the spirit and

purpose of the exemption" (ER Tab 79, p. 6).

The problem, of course, is that the district court's premise is flat wrong.

California's Labor Code, like the federal Fair Labor Standards Act upon which it

sought to expand, is a remedial statute that must be "liberally construed" in order

"to promote the general object sought to be accomplished." *California Grape &*

*Tree Fruit League v. Industrial Welfare Commission*, 268 Cal. App. 2d 692, 698

(1969); *see also McIntosh v. Aubry (Pricor, Inc.),* 14 Cal. App. 4th 1576, 1589

(1993).  Since the purpose of the Labor Code is to secure for California's citizens

30

fair working conditions and wages, including fair compensation for overtime work, *id.,* a court interpreting *exemptions* to the Labor Code's core command must do so sparingly.  The very nature of an exemption undermines the purpose of the overtime laws in the first instance.  As such, an exemption must never be expanded to anyone "other than those *plainly and unmistakably* within its terms." *Nordquist v. McGraw Hill Broadcasting Co.*, 32 Cal. App. 4th 555, 562 (1995) (exemptions "are narrowly construed against the employer and their application is limited to those employees *plainly and unmistakably* within their terms") (emphasis supplied); *see also Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 794  (1999) ("under California law, exemptions from statutory mandatory overtime provisions are narrowly construed").

By applying a broad definition-by-analogy to "selling" as used in the California outside salesperson exemption, the district court essentially interprets the California outside salesperson exemption to be broader than, and thus less protective of employees than, its federal counterpart, in direct contravention of the teachings of the California Supreme Court in *Ramirez.*  Under the district court's broad interpretation of the exemption, employees performing promotion work incidental to sales to be made by others would be within the scope of the California exemption (thus *not* protected by the overtime laws) whereas the same

31

employees would not be within the scope of the FLSA exemption (and thereby protected by the overtime laws) under the federal scheme.  If upheld, this would be the first time in the history of the California overtime laws that any California exemption has been held to be broader than the corresponding federal exemption (past lower court rulings that have done so have all been overruled on appeal).

As both a general proposition and in regards to the outside sales exemption, California law has been held to be more employee-protective than federal law.  "A review of our labor statutes reveals a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally." *Armenta v. Osmose, Inc*., 135 Cal.App.4th 314, 323-24 (2005). *See also Ramirez*, 20 Cal. 4th at 797.

Further, by interpreting the California outside sales exemption to be less protective of employees engaged in promotional activities incidental to sales to be made by another, the district court would reach the absurd result that, at least as applied to that group, the California outside sales exemption would be absorbed by federal law.  "When state laws differ from the federal FLSA, an employer must comply with the standard most protective to employees."  DOL Fact Sheet #17F: *Exemption for Outside Sales Employees Under the Fair Labor Standards Act (FLSA)*.  *See also* 29 U.S.C. §218 (stating that no provision of the Act "shall

excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wages established under this Act.").

Finally, such a finding is likely inconsistent with the intent of the Legislature in adopting § 1171. The federal outside sales exemption already existed at the time the California legislature adopted its outside sales exemption, as did the interpretive regs regarding the distinction between promotion and sales. Yet, the Legislature did not insert any provision expanding the definition of sales in § 1171 and in the intervening years the IWC has similarly not in any Wage Order adopted a definition of sales broader than that contained in the FLSA or otherwise adopted any provision disavowing in any manner the federal distinction between promotion and sales. Moreover, it is highly unlikely that, in adopting the California outside sales exemption, the California legislature intended to adopt a provision less protective of employees than its federal counterpart which could lead to the California exemption being swallowed by federal law.

### A Proper Application of a Narrow Construction of California's Outside Sales Exemption

Properly applying a narrow construction of the plain language of the California outside sales exemption, clearly D'Este was not engaged in "selling

33

tangible or intangible items or obtaining orders or contracts for products, services
or use of facilities." D'Este did not engage in any transactional sales transaction
with any of the physicians on whom she called. She obtained no payment, no
promise of payment, indeed no consideration at all from the physicians on whom
she called and she transferred title to no tangible or intangible items to those
physicians.

Nor did D'Este obtain any orders or make any contracts for Bayer products.
No orders for Bayer products were placed with or through D'Este, thus she
"obtained" none, and she executed no contracts with the physicians on whom she
called. While no one disputes that D'Este provided physicians with information
and attempted to persuade them of the benefits of Bayer's products for the
physician's patients in order to induce physicians to write more prescriptions for
Bayer products, which might ultimately result in the sale of a Bayer product by
some unknown retail pharmacy, D'Este herself engaged in no sales. Accordingly,
because she did not actually consummate sales, she cannot "plainly and
unmistakably" fall within the terms of California's outside sales exemption.

<u>The District Court's Flawed Logic</u>

Beyond violating the basic principle of narrow construction of exemptions,
the district court's analysis is logically and factually flawed. For example, in its

finding that plaintiff was hired and evaluated based on her ability to 'increase sales of [Bayer] products (i.e., change prescribing behavior [of medical providers])," the district court's implied assumption is that the only way in which Bayer can impact the sales of its pharmaceutical products is through "sales" by outside salespersons. This assumption is both flawed and circular.

Promotion, marketing and advertising all impact the sales of pharmaceutical products. Pharmaceutical Reps engage in the first two of those activities. Merely because plaintiff was hired and evaluated on her ability to change the prescribing behavior of medical providers which would result in increased sales by some unknown retail pharmacy does not lead to the conclusion that plaintiff was engaged in selling. Impacting sales and consummating sales are not the same thing. Marketing and advertising are designed to increase sales of products at the retail level, but those activities are not sales themselves.

Pharmaceutical Reps engage in a form of targeted marketing or personalized product promotion. They provide information and may even utilize sales skills to attempt to change the prescribing behavior of medical providers. But they do not sell. They provide no product to medical providers in exchange for consideration. Any sales that result from the activities of Pharmaceutical Representatives are made not by Pharmaceutical Reps or even by Bayer, but by retail pharmacies, just

as the sales that result from any other marketing or advertising activities by Bayer result in sales by retail pharmacies.

Similarly, the district court's finding that "[b]ecause patients are unable to obtain Bayer's products directly and must have a prescription from a physician, Bayer directs the focus of its sales efforts at the doctors who are responsible for making the purchasing decision on behalf of the patient," is equally flawed. While it may well be rational for Bayer to aim its efforts at physicians rather than consumers, the fundamental flaw in the court's analysis is that those efforts must be "sales." The court's reasoning is circular – because the efforts must be sales, they are sales. The real analysis, which the district court avoids altogether, is whether these efforts are sales or targeted promotion and whether the sales are consummated by Pharmaceutical Reps or retail pharmacies. Moreover, the district court completely ignores that the true purchasers, at least directly from Bayer, the Pharmaceutical Reps' employer, are the wholesalers (and to some extent hospitals and pharmacies themselves).

Likewise, the district court's numerous references to the fact that Bayer referred to Pharmaceutical Reps as "salespersons," to their "sales" training, and to the "sales" terminology that was utilized within Bayer is nothing more than window-dressing. Under both federal and California law, titles and labels are

irrelevant to the issue of whether an employee is exempt. *See* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the bases of whether the employee's salary and duties meet the requirements of the regulations. . . ."); *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 337 (6th Cir. 1970) (holding that certain route men did not qualify within the "outside salesman" exemption despite a collective bargaining agreement that designated the route men as "salesman"); *Perine v. ABF Freight Systems, Inc.*, 457 F.Supp.2d 1004, 1012 (2006) (job titles are unimportant in determining whether employee is exempt or nonexempt from overtime provisions of IWC wage order).

Whether an employer refers to an employee as a salesperson or even if the employee considers herself in a "sales" job is irrelevant. In California, the role of the Court in determining whether an employee is exempt is to look at the requirements of the job, focusing primarily on what the plaintiff actually does. *Ramirez*, 20 Cal.4th at 802 ("in determining whether the employee is an outside salesperson, [the Court should inquire] into the realistic requirements of the job. In so doing, the court should consider, first and foremost, how the employee actually spends his or her time.").

That an employee receives "sales" training and uses "sales-speak" also is not determinative of whether the employee is engaged in sales. Just because Pharmaceutical Reps are taught and use sales "skills" in carrying out their job (for, after all, what are "sales" skills other than "persuasion" skills) doesn't make them salesmen. Lynn Swann, the Pittsburgh Steelers' Hall of Fame wide receiver, took ballet training to develop coordination and flexibility – skills he utilized in playing professional football. Being taught ballet skills did not make Swann a ballerina.

The skill set Bayer determined to develop for its Pharmaceutical Reps does not equate to define what they did. They could use all of the sales skills and sales-speak in the world, but if what they did was not sales, they are not covered by the outside sales exemption. The district court is attempting here to get into sales through the back door. The problem is, with exemptions, there IS no back door. Exemptions apply only to those who plainly and unmistakably fit within the strict terms of the exemption. If you can't make it in the front door, you don't get in.

The district court's reliance on the fact that D'Este was paid "commissions" is inaccurate both factually and logically. D'Este was not paid commissions; she was paid a bonus or incentive compensation. Under California law, "commissions" must be a percent of the price of the product or service. *Keyes*

38

*Motors v. DLSE* (1987) 197 Cal. App. 3d 557.  As the portion of the record relating to "incentive compensation" make clear, the incentive compensation received by Pharmaceutical Reps was based primarily on the volume of prescriptions written and was not a percentage of the price of the products sold by retail pharmacies as a result of those prescriptions.[11]  Moreover, unlike commissions, which would continue to accrue with each sale made, D'Este's incentive compensation was capped.  (ER Tab 38, p. 7).

Even if D'Este could be said to have received commission pay, that factor should not and cannot override the language of the exemption itself.  Neither the definition of outside salesperson nor the definition of selling contain any requirement that the employee be paid on a commission basis.  The terms of the exemption do not exclude from its coverage an outside salesperson who is paid a straight salary or by the hour.  Likewise, an employee who does not sell within the meaning of the exemption cannot be brought within the coverage of the exemption simply because she is paid in whole or part on some commission-like basis.

---

[11]    *See* Getson Dec., Exh. E at E-48 (incentive compensation not a straight-line relationship between volume and incentive compensation, as a commission based on a percentage of the price of the product would be, but accelerates most between 90-110% of volume quota, but is flatter both before and after that range and is capped once the percentage of volume quota hits 140%) (ER Tab 38, p. 7), and E-55 (quotas and incentive compensation based primarily on volume). (ER Tab 38,  pp. 5-6).

The district court's creation of fiction in order to reinvent Pharmaceutical Reps' activities into "sales" activities may have reached its zenith with the district court's finding that Plaintiff was a "seller" because she had the capacity to "obtain[] commitments from the doctors she called on" to write additional prescriptions for Bayer products. Beyond the fact that to make this finding the district court had to improperly make inferences from the record in favor of Bayer,[12] the district court's reinvention of a colloquial, illusory, non-binding, unenforceable "commitment" into a "sale" is nothing short of alchemy. It is an unreasonable and impermissibly broad interpretation of the exemption. As throughout this opinion, the district court has, faced with two arguably reasonable constructions of the exemption,[13] improperly and consistently failed to apply the narrower, employee-protective construction.

---

[12]    Regarding "commitment," the district court relied on a portion of an answer by D'Este during her deposition that at the end of a meeting with a doctor she would "get a commitment" to prescribe a Bayer drug. (ER Tab 34, p. 19, ¶ 22). However, later in her answer, D'Este clarified that what that meant was "will you use Avelox or *would you consider* writing Avelox." (*Id.*). The district court further completely ignored the declaration of Natalie Balyasny, another Bayer Pharmaceutical Rep, that although she would at the end of her meetings with doctors ask the doctors to write prescriptions for Bayer drugs, "the doctor was not committed or bound" to do so. (ER Tab 53, p. 13, ¶ 33).

[13]    Although it is difficult to view this "So I can count on your vote?" approach to the outside sales exemption as even arguably reasonable.

Finally, the District Court's reliance on the "spirit and purpose" of the federal outside sales exemption as defined by the federal district court in *Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941) is dreadfully misplaced:

> The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Id.* While it is unclear whether the "spirit and purpose" of the federal outside sales exemption is relevant to the outside sales exemption under California law, to be fair, the DLSE has expressed a similar policy rationale for the California outside sales exemption.[14]

---

[14] "Outside salesmen have historically been exempt 'because it's very difficult to control their hours and working conditions. They set their own time, and they're on the road, they call on their customers . . . . [R]arely do you know what they're doing on an hour-to-hour basis.' (Transcript of IWC Meeting 2/23/96, p. 148)." DLSE Opinion Letter, "Applicability of Outside Sales Exemption to Salesperson Who Sell Tract Homes While Based in a Model Home

One thing is clear, however.  No "spirit and purpose" or policy rationale can substitute for meeting the specific requirements of the plain language of the exemption.  The California Supreme Court's opinion in *Ramirez* makes this perfectly clear.  While *Ramirez* did not involve the issue of whether the plaintiff in that case was involved in "sales" in the first instance, it *did* involve the issue of whether the plaintiff was involved in sales more than 50% of his working day.  There can be no doubt but that the Plaintiff in *Ramirez* fit within the "spirit and purpose" as articulated by the *Jewell Tea* court and the "policy rationale" expressed by the DLSE.  Nonetheless, the California Supreme Court made perfectly clear that, unless the Plaintiff  fit within the express requirements of the language of the exemption itself – in that case, selling more than 50% of his working day – he could not be held to be subject to the exemption.

This point was specifically driven home by the California Supreme Court in *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (Cal. 2000).  At issue in *Morillion* was whether the plaintiff's compulsory travel time on company busses was "hours worked" within the meaning of Wage Order 14-80.  The Defendant in that case, like District Court here, attempted to argue that policy considerations weighed against making the plaintiffs' travel time compensable.  The California Supreme

---

or Trailer" (9/9/1998).

Court rejected this argument, specifically finding that policy rationale "do not

override the plain language of Wage Order 14-80, which supports plaintiffs' claim

that their compulsory travel time is compensable as 'hours worked.'" 22 Cal. 4th at

594.  Similarly, the policy considerations identified by the district court simply

cannot override the plain language of the Wage Orders' definition of the outside

sales exemption, requiring that, in order to be subject to that exemption, the

plaintiff must be "selling" Bayer's products – not promoting Bayer products to be

sold by unknown retail pharmacies.

<u>Conclusion</u>

D'Este does not fall plainly and unmistakably within the plain meaning of

the terms of California's outside sales exemption.  The district court's order and

judgment should be vacated and the case remanded.

Respectfully submitted,

OF COUNSEL:

GILLESPIE, ROZEN, WATSKY & JONES                 James A. Jones
3402 Oak Grove Ave.                              jaj@grwlawfirm.com
Suite 200                                        3402 Oak Grove Ave.
Dallas, Texas 75204                              Suite 200
(214) 720-2009                                   Dallas, Texas 75204
                                                 (214) 720-2009
                                                 (214) 720-2291 (fax)

                                                 Attorney for Plaintiff/Appellant

<u>Statement of Related Cases</u>

Plaintiff-Appellant identifies the following case pending before this Court as related due to the fact that it raises the same or closely related issues:

Barnick v. Wyeth
United States Court of Appeals for the Ninth Circuit
Docket No. 07-56684

_____
James A. Jones

**<u>Certificate of Service</u>**

I certify that two true and correct copies of this document were served upon counsel of record by Federal Express delivery (2nd Day Air), on the 31st day of December, 2007, addressed as follows:

Melinda S. Riechert
Shannon B. Nakabayashi
MORGAN, LEWIS & BOCKIUS, LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306-2122

Jennifer White-Sperling
Benjamin Davidson
MORGAN, LEWIS & BOCKIUS, LLP
5 Park Plaza, Suite 1750
Irvine, CA 92614

_____
James A. Jones

44

<u>Certificate of Compliance</u>

Pursuant to Fed. R. App. Pro. 32(a)(7)© and 9th Cir. R. 32-1, the undersigned certifies that the attached opening brief complies with the type-volume limitations of 9th Cir. R. 28-4.

1.      Exclusive of the exempted portions in Fed. R. App. Pro. 32(a)(7)(B)(3), the brief contains 11,268 words.

2.      The brief has been prepared in proportionally spaced typeface using Word-Perfect 12.0 in Times Roman Font, 14 point.

3.      If the Court so requests, the undersigned will provide an electronic version of the brief and/or a copy of the word count printout.

4.      The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits may result in the Court striking the brief and imposing sanctions against the person signing the brief.


_____

James A. Jones